(115 App. Div. 388)

## COMMERCIAL WOOD & CEMENT CO. v. NORTHAMPTON PORTLAND CEMENT CO.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

CORPORATIONS—CONTRACTS.

    A contract of the executive committee of a corporation purported to make one party sole selling agent for the corporation, at a commission of 6 per cent. The agent agreed to keep a set of books, and to maintain a suitable office in which to conduct the business (which .it nowhere expressly agreed to conduct) in a suitable manner, with a proviso that such office might be a part of the agent's general office, where a similar business was conducted. The agent was to pay expenses of delivering any advertising matter sent out by it, but nowhere agreed to sell, or to endeavor to sell, any of the principal's product, or to send out any advertising matter. The contract extended far beyond the life of the committee. *Held* to be void as beyond the powers of the committee.

    [Ed. Note.—For cases in point, see vol. 11, Cent. Dig. Contracts, §§ 25–37.]

Appeal from Trial Term, New York County.

Action by the Commercial Wood & Cement Company against the Northampton Portland Cement Company. From a judgment in favor of defendant, and an order denying motion for a new trial, plaintiff appeals. Affirmed.

See 84 N. Y. Supp. 38.

Argued before O'BRIEN, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

L. Laflin Kellogg, for appellant.

Harmon S. Graves, for respondent.

HOUGHTON, J. The defendant is a corporation organized under the laws of the state of Delaware, and engaged in the business of the manufacture and sale of cement in the state of Pennsylvania, having an office in the city of New York. There were 11 directors, 5 of whom had been appointed an executive committee. The by-laws under which this appointment was made reads as follows:

"There shall be an executive committee consisting of five members, who shall be chosen by the directors, and who shall meet whenever they see fit, or subject to the call of the chairman, or upon the written request of two of its members. A majority of the committee shall constitute a quorum. They shall have authority to exercise any powers of the board when the board is not in session, and they shall have the power to order the seal to be affixed in cases where the same may be required, subject at all times to the orders of the directors."

Amongst the members of the executive committee were the president and general manager, neither of which in such capacities, however, is claimed to have had the power to make the contract involved herein.

The plaintiff is also a Delaware corporation, engaged in the business of marketing and selling cement, likewise having an office in the city of New York; a very large majority of the stock of which was owned by its president, Ralph Peverly. It had a board of three directors, two of which were its' president and secretary. Dissensions had arisen amongst the stockholders and directors of the defendant, particularly with respect to changing the sales agent of the company, which culminated in the calling, on the 25th day of June, 1901, of a meeting of the stockholders at Dover, Del., for the 28th day of June, following, for the purpose of amending the by-laws, so as to increase the number of directors, and to give the board of directors power to remove any member of the executive committee when it was thought to be for the best interests of the corporation.

The president of the plaintiff was on friendly terms with the president and the general manager of the defendant, and they had been negotiating with him for some time prior to June 25th respecting a contract with the plaintiff to act as sales agent for the defendant; and, by their direction, the president of the plaintiff had prepared the contract in controversy. There had been a meeting of four members of the executive committee on the 25th of June, two of which opposed this plan, but no mention was made of the proposed contract. A meeting of the full board of directors had been called for June 27th at 2 p. m. On the 26th, the chairman of the executive committee of defendant informed the president of plaintiff that the contract should be signed, and was informed that the plaintiff's secretary could be gotten from Philadelphia where he then was, in the morning. Thereupon a call was issued for a meeting of the executive committee of the defendant, on the 27th of June at 10 o'clock, a. m., at which meeting, three members being present, a resolution was passed, directing the execution of the contract in controversy; and it was thereupon signed by both parties, with the seals of the two corporations attached.

In substance the contract provides that the plaintiff should be the sole selling agent of the entire output of cement of the defendant for the period of five years, or, in default of notice of termination, for five years more, and receive a commission of 6 per cent. on all sales whether made by it or others, payable on the 15th day of the month following shipments. The defendant to fix the terms of sale, and a minimum price, which should not be changed except on 30 days' notice, and which minimum should be binding on all proposals for the furnishing of cement made by the plaintiff prior to such notice; defendant to pay for all advertisements, of which, however, plaintiff was to have charge. The plaintiff did not agree, except by such implication as the law might raise, to make any sales, or endeavor to make any, and specifically bound itself to do nothing except to keep a set of books in the name of defendant, showing sales and credits, and to make remittance of receipts, and to maintain a suitable office, separately, or in connection with its own general offices, and to pay any clerks, bookkeepers, salesmen, or stenographers which it might employ in such office, and all postage and express charges on advertising matter which it might distribute. Certain other details of conduct are specified, which

are not material; and a further clause provided that, if at any time during the continuance of the contract, a change in the management of the defendant corporation should take place, the plaintiff's rights under the contract should be preserved. A copy of this contract was transmitted to the board of directors, which met within two hours after it was executed, and they passed a resolution, notifying the plaintiff to take no action, and incur no expense under it until it should be further considered and ratified, or rejected; which resolution was at once transmitted by telephone and messenger to plaintiff. The president and the general manager, who had been instrumental in the execution of the contract, were summarily removed from office, and from the executive committee; and on the 17th of September, following, the board of directors of defendant formally rejected and repudiated the contract, and so notified the plaintiff. The plaintiff, in pursuance of the contract, wrote some letters and sent some orders, which were rejected before the contract was formally repudiated; and in May 1902, this action was brought for damages, and the plaintiff proved that its commissions of 6 per cent. on the amount of defendant's sales up to October, 1905, amounted to the sum of $90,590.10, from which it conceded should be deducted expenditures which would have been incurred had it carried out the contract of $2,700 per year. At the close of all the evidence, the court dismissed the plaintiff's complaint, and, we think, properly.

Notwithstanding the hurried and surreptitious manner in which the contract was executed, if its validity depended upon bad faith or fraud, that question would be for the jury to determine, and not for the court. We think, however, the contract was unreasonable, and one not within the power of the executive committee to make, because it was not within the contemplation of the by-law creating such committee. It certainly was an extraordinary contract for an executive committee to make during the last hours of its existence. It was one involving serious consideration and careful discretion on the part of the managers of the corporation, and one which as a business proposition, if made at all, should have been made by the board of directors themselves.

The laws of the state of Delaware, which were proven, provide that the business of every corporation shall be managed by a board of directors whose term of office shall be one year, unless they shall be divided into classes, which was not done in the case of defendant. The term of office of the board of directors, therefore, was for one year only. The term of the contract extended far beyond the life of the executive committee as well as that of the board of directors which created it. The by-law giving authority to the executive committee to exercise any powers of the board of directors when not in session, must be construed to relate to such ordinary and administrative business of the corporation as from time to time might arise during the term of office of the directors themselves. It cannot be presumed that the board intended to delegate to an executive committee the making of a contract which would tie the hands, not only of the present, but future, directors. In construing the action of the board of directors in adopting a by-law conferring powers upon executive officers or committees,

it must be assumed that they had in mind the provisions of the statute fixing their own terms of office, and that, at the expiration of that period, other persons might be chosen upon whom would rest the responsibility of the conduct and management of the business of the corporation, and that they had no right to interfere with the powers of future boards by imposing upon them unreasonable contracts, and such, provision of the statute may properly be taken into consideration by the court in determining whether the contract is reasonable or unreasonable. Carney v. N. Y. Life Ins. Co., 162 N. Y. 453, 57 N. E. 78, 49 L. R. A. 471, 76 Am. St. Rep. 347; Caldwell v. Mutual Reserve Fund Life Assn., 53 App. Div. 245, 65 N. Y. Supp. 826.

The executive committee had only such powers as were conferred upon it. They were not officers of the company, having inherent and executive authority to contract concerning, and conduct and manage the corporate business. The plaintiff was not dealing with the president and general manager as such, and was not lured into the contract by any apparent authority which they, as such officers, possessed. Its president was informed that the executive committee must meet, and that it would meet and take action upon the contract, after which it would be executed. The dealing was, therefore, with the executive committee, an artificial creation of the corporation, and plaintiff was bound by such authority as it had. Alexander v. Cauldwell, 83 N. Y. 480. In our opinion, it did not have authority to make the contract which it assumed to make, and the defendant was not bound by it. The unreasonableness of the contract is shown by the plaintiff's own proof, which discloses an income to it of more than $20,000 per annum for an expenditure of $2700. There may be doubt that even the board of directors had the right to enter into any such contract; but, in our view of the case, it is unnecessary to determine that question.

It is urged that the contract lacks mutuality, in that the plaintiff did not covenant to make any sales or to use its best endeavors so to do. Whether a covenant will be read into a contract where there is no express agreement to perform, depends upon the intent of the parties gathered from the instrument and the surrounding circumstances. Booth v. Cleveland Rolling Mill Co., 74 N. Y. 15; Wells v. Alexandre, 130 N. Y. 642, 29 N. E. 142, 15 L. R. A. 218; Jacquin v. Boutard, 89 Hun, 437, 35 N. Y. Supp. 496; Horton v. Hall & Clark Mfg. Co., 94 App. Div. 404, 88 N. Y. Supp. 73. The plaintiff held agencies for other cement companies, and maintained an office for the purpose of selling cement. The contract specifies certain things which it shall do and may do, but nowhere provides that it shall make any effort to sell the cement of the defendant. We are inclined to the opinion that a covenant to use best endeavors to sell may be read into the contract; but our view of the contract itself, and lack of authority on the part of the executive committee to enter into it, renders a determination of that question unnecessary.

Our conclusion is that the judgment is right, and should be affirmed. Judgment and order affirmed, with costs. All concur.

INGRAHAM, J.  I concur in the conclusion that this judgment
should be affirmed.  The contract which is here sued on was for a
term of five years from the day of its date, June 27, 1901.  It purports
to make the plaintiff the defendant's sole selling agent for its entire out-
put of cement, manufactured at Stockertown, Pa., or at any other place,
and obligated the defendant to pay to the plaintiff a commission of 6
per cent. on all sales of cement, whether made by the party of the
second part or others.  Each clause of this contract contains obliga-
tions of the defendant, but the contract can be searched in vain for any
obligation imposed upon the plaintiff, except that the plaintiff is
to keep a set of books and to maintain at its expense in the city of
New York a suitable office to conduct the business (which it nowhere
agrees to conduct) with the dignity necessary to properly represent the
defendant, with a proviso that such office may or may not be a part of
the party of the second part's general office for the sale of cement, and
to pay all postage or other charges for the delivery of advertising matter
which it (party of the first part) may distribute.  There was no ac-
ceptance of the party of the second part of the appointment as sole
selling agent, although that could possibly be assumed from the ex-
ecution of its contract.  There was no obligation of the plaintiff to
sell or to endeavor to sell a barrel of the plaintiff's cement; no obliga-
tion to expend a dollar in the prosecution of the business of the de-
fendants.  If it sold none of the defendant's cement, it had no use for
books or clerks, and would not, therefore, incur any expense therefor;
and if it distributed no advertising matter, it would be under no obliga-
tion to pay any postage whatever.  The plaintiff could comply with
every provision of the contract without being required to spend a dollar,
and the defendant would have to pay to the plaintiff a commission of
6 per cent. upon all the cement that it manufactured and sold.  There
could never be any breach of this contract by the plaintiff, because
under it the plaintiff did not obligate itself to do anything, and, yet, for
five years it could be entitled to demand from the defendant a com-
mission of 5 per cent. upon all cement that the defendant manufactured
and sold.  The contract contains no statement of the consideration, and
the only consideration that could sustain it is mutual promises of these
parties thereto; but, in order that there should be such a consideration,
there must be promises or obligations assumed by both of the contract-
ing parties.  The only possible consideration, therefore, for this contract
would be an assumption of mutual obligations by both the contracting
parties, and, as I read this contract, there is no obligation assumed
by the plaintiff to sell any cement, make any efforts to sell any cement,
or to transact any business for the defendant; no obligation for a breach
of which a cause of action would arise in favor of the defendant
against the plaintiff.  It is said in 9 Enc. of Law & Pro. at page 325:

"A promise is a good consideration for a promise, provided always that it
imposes some legal liability on the person making it.  If it imposes none, then
it cannot be a consideration."

And, at page 327:

"There are many cases in which, although the offer is definite enough, yet
the acceptor by merely accepting has really himself promised nothing in re-

turn, has not made himself liable for anything, so that, although one is bound the other is not, and the engagement lacks what is called mutuality. In such a case there is not an enforceable agreement."

In Chicago & G. E. R. R. Co., v. Dane, 43 N. Y. 240, where the defendant wrote a letter to the plaintiff, saying he agreed to receive "in this port [New York], either from yard or vessel, and transport to Chicago, by canal and rail or the lakes, for and on account of the Chicago & Great Eastern Railway Company, not exceeding 6,000 tons gross," the letter was answered as follows:

"In behalf of this company I assent to your agreement, and will be bound by its terms."

It was held that there was no contract, the court saying:

"But there was no consideration received by the defendants for giving any such option to the plaintiff. There being no consideration for the promise of the defendants, except this acceptance by the plaintiff, and that not binding it furnish any iron for transportation unless it chose, it follows that there was no consideration for any promise of the defendants and that the breach of such promise furnished no foundation for an action."

Rafolovitz v. American Tobacco Co., 73 Hun, 87, 25 N. Y. Supp. 1036, is another illustration of the same principle. In that case the defendant promised and agreed, in consideration that the plaintiff would purchase and sell a certain cigarette manufactured by the defendant, that the defendant would allow and pay them as compensation or commission for said purchase 20 cents on every 1000 of cigarettes manufactured by the defendant and purchased by the plaintiff. It was held that, as there was no promise on the part of the plaintiff to purchase cigarettes which was enforceable by the defendant, it did not furnish a consideration for the defendant's promise.

I think, therefore, as there was an entire lack of mutuality and this contract imposed no obligation upon the plaintiff, there was no consideration to support the promise of the defendant, and therefore there was no cause of action.