RENNIE v. MUTUAL LIFE INS. CO. OF NEW YORK.

(Circuit Court of Appeals, First Circuit. February 11, 1910.)

No. 847.

1. INSURANCE (§ 56*)—MUTUAL COMPANIES—AUTHORITY OF PRESIDENT TO MAKE CONTRACT—CONSTRUCTION OF BY-LAWS.

The by-laws of a life insurance company required the president to report quarterly to the trustees a summary of the business of the preceding quarter, stating the contracts that had been made, etc. They also provided that the president should have "the general direction and superin-

---

tendence of the affairs and of the officers of the company," and should establish rules and regulations for the conduct of the business of the company. *Held*, that such provisions did not vest the president with power to make an oral contract with a general agent, binding the company after the termination of his agency, in a certain contingency to pay him a sum annually during the remainder of his life sufficient for his support,. and that in the absence of ratification by the company, or a course of dealing from which the authority of the president might be inferred, such a contract was not binding.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 70; Dec. Dig. § 56.*]

2. CORPORATIONS (§ 432*)—UNAUTHORIZED CONTRACTS BY OFFICER—RATIFICATION.

Evidence considered. and *held* not to establish a ratification by a corporation of an unauthorized contract claimed to have been made by its president.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 1717; Dec. Dig. § 432.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action by Zenas Crane Rennie against the Mutual Life Insurance Company of New York. Judgment for defendant, and plaintiff brings error. Affirmed.

Samuel H. Pillsbury (Currier, Rollins, Young & Pillsbury and Philip C. Stanwood, on the brief), for plaintiff in error.

William D. Turner (Reginald Foster and George Hoague, on the brief), for defendant in error.

Before PUTNAM and LOWELL, Circuit Judges, and HALE, District Judge.

HALE, District Judge. This is an action upon an oral contract, alleged to have been made in September, 1886, whereby, in consideration that the plaintiff would accept the position of general manager for the defendant in Australia and go to Australia in order to be general manager, the defendant corporation agreed that if, on the termination of his employment as said general manager, the plaintiff had not succeeded in building up a, satisfactory renewal commission account, the defendant would pay to him annually for the remainder of his life an amount sufficient to support him. At the close of the evidence in the court below, a verdict was directed for the defendant, on the ground that the evidence did not show authority of the president to make the contract; nor did it prove any subsequent ratification of the contract by the corporation. To this ruling the plaintiff—the plaintiff in error in this court—excepted, and now assigns the ruling as error.

The testimony shows that the alleged oral contract was made by the president.· The defendant says that the president had no authority to make the contract, and that it was never ratified afterwards by the corporation or by its trustees.

1. Did the president have authority to make the contract?

The following by-laws relating to this issue are brought to the attention of the court:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"(4) Quarterly meetings of the trustees shall be held on the first Wednesdays of January, April, July, and October, and a report shall be made to them by the president of the concerns and business of the company during the previous quarter, stating particularly the contracts that have been made, the sums of money that have been received and on what accounts, the manner in which the same shall have been invested or paid and the amounts on hand and the amounts that should have been received during said quarter, and a general balance sheet exhibiting a full statement of the funds, investments, payments, and liabilities."

"(11) The president shall, if present, preside at all meetings of the trustees. He shall be ex officio member and chairman of all standing committees except the auditing committee and committee on expenditures, which latter committee shall choose their own chairman. He shall also attend the meeting of any special committee when requested by the chairman. The president shall also have the general direction and superintendence of the affairs and of the officers of the company, and shall establish rules and regulations for the conduct of the business of the company and for the direction of its officers; and in all cases in which the duties of the subordinate officers, employés and the agents of the company are not specially prescribed by its by-laws or by a resolution of the board, they shall obey the orders and instructions of the president."

"(17) There shall be a secretary, who shall hold office during the pleasure of the board, who shall have power with the president to make contracts for insurance on life and for annuities and all other contracts necessary for the company in the management of its affairs in conformity with the rules and regulations of the board for the time being; but no policy or policies shall be issued on any single life for a sum in the aggregate greater than $50,000. He shall have the general management of the office business and of the clerks employed in the insurance department of the company, and of the general correspondence of the company except such as relates to business expressly in charge of the several departments herein provided for. In the absence of the secretary the assistant secretary shall discharge such of the duties of the secretary as may be assigned him by the president, and the president may also, in his discretion, detail any officer or head of a department to act as secretary pro tem."

"(25) No commissions or compensation, direct or indirect, for procuring or facilitating loans from the company shall be received by any trustee or by any of its officers or other person in its employment; and neither the solicitor nor any person in his office, nor any person whatsoever receiving a fixed salary, shall receive pay from or have any claim against the company, excepting his salary; and such salary attached to the office or employment shall be full compensation for all services rendered to the company or performed on its behalf."

"(35) The finance committee shall consist of six trustees, who shall meet at least once every week. All investments of the company shall be made under its direction, and it shall have the supervision of the securities held by the company and select the depositories of its funds. It shall determine all questions of salary and compensation for services when not fixed by the board or other appropriate committee."

"(40) The committee on agencies shall consist of five trustees. It shall have the general supervision of the agency department of the company's business, and recommend to the board what amount shall be paid by way of compensation, settlement, or commutation to any agent or his representatives."

Touching this question, the plaintiff rests his case upon section 11, by which the president is empowered to have the general direction and supervision of the affairs and officers of the company, and to establish rules for the conduct of its business; also upon section 40, which gives the president power to fix the salary or compensation of agents; and, still further, upon section 4, which provides that at each quarterly meeting of the trustees a report shall be made by the president of the business of the company for the previous quarter, stating particularly

the contracts made during the quarter. The plaintiff insists that by these provisions of the by-laws the practical control of the company, in the general course of its business, is given to the president; that he is empowered to fix the compensation of agents, and that this power is not given to the committee on agencies, but that the power of this committee is only to recommend what shall be paid as compensation; and that such authority does not negative the power of the president to make a contract like this. The plaintiff urges, too, that the duty of the president to report to the trustees all contracts made during the past quarter implies that the president had power to make the contracts which he reports, and that such power of the president tends strongly to show that the president had authority to make the contract. The learned counsel for the plaintiff further urge that the plaintiff is not confined to the by-laws alone for proof of the president's authority, but that such authority is shown also by the general and uniform course of dealing of the corporation in the conduct of its business; that President McCurdy conducted the negotiations and wrote the letters touching all matters between the company and the plaintiff; that he made the contract, having full apparent authority; and that the whole testimony tends to show that his authority was recognized and affirmed by the course of dealing of the corporation and its trustees. The plaintiff insists that he was justified in relying upon the apparent authority of the president, and that the corporation cannot now rest solely upon its by-laws, of which the plaintiff was ignorant, and plead the lack of explicit authority given by them, but that the whole question of authority should have been left to the jury.

Upon an examination of the by-laws, we are persuaded that they were not intended to give the president power to make such a contract as is now before the court. It seems clear that the contracts mentioned in the fourth by-law are the ordinary business contracts of the company referred to in section 17, which it is the duty of the president to report, as a statement of the business and assets of the company, at the end of the quarter. It seems clear that if it had been intended to give to the president the power to make so vital a contract for an undefined period, imposing upon the corporation obligations which could not be measured at the time of the making, such power would have been expressly conferred upon him, and would not have been allowed to rest upon mere implication. The daily conduct of the corporation business demanded that the president should have the power, with the secretary, and without calling the trustees together, to make contracts for insurances, for annuities, for other daily matters of routine, and at seasonable times to make report of such contracts; but we can hardly believe that the formal rule and law of the corporation intended to give the president power to bind the company for an indefinite number of years by an oral contract to do an extraordinary thing. The evidence shows how dangerous it would be to invest a president with such power as is here claimed. For whenever a president had ceased to hold his office, either by death or resignation, every employé, and every one who dealt with the company, might claim that he had a binding verbal agreement; and thus it may readily be seen

that, if such authority existed, it might embarrass and wreck the corporation. It is clear to us that there is nothing in the by-laws authorizing the president to make this contract. See Carney v. New York Life Insurance Company, 19 App. Div. 160, 45 N. Y. Supp. 1103, affirmed by the Court of Appeals in 162 N. Y. 453, 57 N. E. 78, 49 L. R. A. 471, 76 Am. St. Rep. 347, where the reasoning of the court is helpful upon the issue which we have just discussed, although upon somewhat different facts.

It is true, however, that the plaintiff is not confined to the letter of the by-laws in his endeavor to show the authority of the president. Parties are not held to any particular mode of proving authority of an agent of a corporation. His authority may be proved by circumstantial evidence—by testimony drawn from the whole course of dealings of the parties. A contract may be implied from corporate acts without either a vote or deed or writing. 2 Kent's Comm. 291; Morawetz on Private Corporations, § 618; Peterson v. Mayor, 17 N. Y. 449; Olcott v. Railroad Co., 27 N. Y. 546, 84 Am. Dec. 298.

In Bank of U. S. v. Dandridge, 12 Wheat. 64, 70, 6 L. Ed. 552, Mr. Justice Story said:

"If officers of a corporation openly exercise a power which presupposes a delegated authority for the purpose. and other corporate acts show that the corporation must have contemplated the legal existence of such authority, the acts of such officers shall be deemed rightful, and the delegated authority will be presumed."

But, upon examining the evidence before us, it can hardly be said that, in making the conversation which is alleged to constitute a contract, the president was acting in the open exercise of any power, within the meaning of the language of Mr. Justice Story; and it clearly cannot be said that any corporate acts of the corporation have been shown which contemplated the legal 'existence of any authority on the part of the president. The whole course of business negatives the authority of the president to make such contract, and leads to the irresistible conclusion that he had the authority, which we have just mentioned, to make only the ordinary routine contracts from day to day, but not to make other contracts, and that he clearly had no power to make an indefinite agreement for a long number of years. On the question of the president's authority we are, then, compelled to conclude that there was no evidence, either direct or circumstantial, which ought to have been submitted to the jury.

2. Was the contract ratified by the corporation?

Ratification may undoubtedly be proved by a course of conduct consistent only with the supposition that the party ratifying intended to adopt the act as his own. Story on Agency, §§ 239, 252.

The evidence proves beyond a doubt that the act of the president in making the alleged oral contract was never reported to the corporation or to its trustees. It is not now necessary to enter into a discussion of the various letters and other writings put in evidence upon this question. It is enough to say that, instead of showing knowledge on the part of the corporation, they distinctly disprove such knowledge. The whole conduct of the plaintiff is inconsistent with his having asserted any contract such as he alleges. The testimony negatives the infer-

ence that the corporation had knowledge of such contract. After a long, but not altogether successful, administration of the company's business as general manager in Australia, under a large salary, the plaintiff was taken from his position and sent back to America upon a pension of $3,500 a year. When removed from the management of the Australian business, and afterwards when deprived of his pension, he does not undertake to assert any contract with the corporation, but urges consideration on the ground of his long service, his dependence upon the company's bounty, and the policy of the company to reward faithful employés. In an elaborate address to the committee of the company, after his pension had been stopped, he takes great pains to recite everything that can help his case; but he nowhere recites that he relies upon any contract with the company. There is no evidence whatever to show that the company had knowledge of a contract, or in any way ratified the contract which is now asserted.

In considering whether the direction of a verdict for defendant is justifiable, it is clearly the duty of the court to take the view most favorable for the plaintiff. But the case presents facts about which but one inference can fairly and reasonably be drawn from the evidence, either as to the authority of the president to contract or as to the subsequent ratification by the corporation. The learned judge who presided at the trial in the court below was clearly justified in taking the case from the jury and directing a verdict for the defendant.

3. It is unnecessary here to consider whether an agreement was ever, in fact, entered into between the president of the company and the plaintiff. The plaintiff offered certain testimony, in the court below, as to his conversation with the president in September, 1886, from which, he claims, a contract resulted. On the other hand, the defendant says that no contract was ever made, and relies upon inferences to be drawn from all the circumstantial evidence. It urges that the conduct of the plaintiff, in never asserting a contract, and in acting inconsistently with its existence, tends strongly to negative the fact that the contract was ever made, and that the whole course of business of the corporation tends to the same result. If this had been the only point at issue, it might have been the duty of the court to submit the case to the jury upon the direct evidence upon the one side and the circumstantial evidence on the other. We do not pass on this question. It is enough to say that, upon the question of the authority of the president and of the ratification by the corporation, there was nothing which ought fairly to have gone to the jury, and it was clearly the duty of the presiding judge to direct a verdict for the defendant.

4. The plaintiff also assigns as error that the trial court excluded evidence that the plaintiff, in 1889, sold his Springfield office to the defendant company, and put the money into the Australian business, by arrangement with President McCurdy. The court finds that this evidence was properly excluded. It was not material upon any issue in the case. It did not tend to show that the contract of 1886 had been made, or that the president had any power to make it. The only possible question could be whether it was a part of the course of business, and had some bearing upon the question of ratification. We are of the opinion that it was not material on the question of ratification.

Upon this point, however, it is proper to say that, on examination of the record, it appears that substantially the same fact was brought to the attention of the court in the memorial or address made by the plaintiff to the committee of the corporation, to which we have previously adverted. It appears, further, on examination of the record, that in cross-examination the plaintiff was asked touching this matter; so that, if it can possibly be held that the evidence had any bearing on ratification, we find that it was substantially presented in another form in the court below. The evidence was properly excluded.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers its costs of appeal. ·