Plaintiff brought this action to recover damages for the breach of a contract of employment. The case was tried to a jury. A verdict was returned in favor of the plaintiff. Defendant moved for judgment notwithstanding the verdict. The motion was granted and plaintiff has appealed from the judgment rendered.
In ordering judgment notwithstanding the verdict the trial court prepared and filed a written opinion, from which we quote:
"The above entitled case was tried as a jury case. The jury returned a verdict in favor of the plaintiff for the sum of one thousand six hundred fifty dollars ($1,650).
"The cause comes now before the court on motions for either judgment notwithstanding the verdict or for a new trial. The court is confronted with the question of whether the roundhouse foreman at Marmarth, North Dakota, or the master's mechanic, of that division, *Page 679 
or both of them together, have authority to bind the defendant company by making a contract for life employment.
"The material allegation of the complaint on this point reads as follows: `The defendant thereupon informed plaintiff that the position of hostler at Marmarth, North Dakota, had been vacant for a long time, had in fact been bulletined for three months, and that the defendant was unable to get any one to take the position, and defendant repeatedly insisted and requested that the plaintiff take said position as hostler, and assured plaintiff that this position would be permanent, and that he would not be displaced by any one at any time in the future, and that he would be a fixture, and entitled to hold said position and not subject to removal or displacement without cause.'
"The evidence shows that such contract, if any was made, was made by the plaintiff with either the roundhouse foreman at Marmarth, or the master mechanic of that division, or both of them.
"As I view this case, there are two important points of law involved.
"First: Has the roundhouse foreman or the master mechanic, or both jointly, power and authority to make a contract for life employment with an employee of the defendant railway company, and thus bind the company?
"Second: If the first question must be answered in the negative, then is there sufficient evidence in this case to show ratification by the defendant company, through its proper officers, of the contract made by the roundhouse foreman and master mechanic?
"Both sides have submitted able and extensive briefs, supporting their respective contentions. Without referring to the numerous cases cited, I might say that most of them bear upon contracts made between some officer of the railway company and an employee of the company that sustained injury while in its employ, and in consideration of the compromise settlement and to avoid litigation, the company agreed to retain the employee for the remainder of his life.
"The rule in that connection is now quite well established. But that rule is of little assistance to us in this case.
"Here, taking the plaintiff's version of the facts under which he claims the contract was made, we find that there was an opening for a certain position, the party next in rank or entitled to the job did not avail himself of the opportunity, and after the position had been *Page 680 
bulletined for some time, the plaintiff was given the position, with the contractual assurance that he might retain the same for life, and that he should not be removed, except for good cause.
"The plaintiff, as and for consideration for said contract, claims that he gave up a better paying job which he held with the defendant company at that time. It is apparent that such a contract is unusual, and of an extraordinary nature. Such is apparent from the scarcity of decisions on the subject.
"So far as the consideration for the contract in question is concerned, and thus make it mutual, I would find no difficulty in holding that the giving up of a better paying position for the one in question would be sufficient consideration.
"Carnig v. Carr, 167 Mass. 544, 35 L.R.A. 512, 57 Am. St. Rep. 488, 46 N.E. 117.
"The plaintiff makes the strong point that since it is conceded that the roundhouse foreman had authority to employ men at Marmarth for the defendant, it naturally follows that he had authority to make contracts for life or to give permanent employment. But the roundhouse foreman or master mechanic has not the management of the company's business in his charge or care. His authority is extremely local. His duties are local.
"There are many divisions and roundhouses on the company's line from Chicago to the Pacific Coast, and every one of them has a roundhouse foreman, and all of these foremen are subordinates of other officials of the company, and so on up until it reaches the board of directors of the company, which has the management of the company's business in charge.
"Plaintiff cites and relies to a considerable extent upon the case of Brighton v. Lake Shore M.S.R. Co. 103 Mich. 420, 61 N.W. 550, which holds that it was proper for the trial court and jury to find that two division superintendents of a railroad, who represented the company in the settlement of a claim for personal injuries, had authority to make an agreement that the injured employee should be employed at a specific salary for life, or during his ability and disposition to perform the duties of his position.
"A careful reading of this case shows that it is one of those personal *Page 681 
injury cases in which he was given life employment in consideration of the adjustment of his claim for injuries.
"This fact is mentioned by Chief Justice Grant, in the case of Maxson v. Michigan C.R. Co. 117 Mich. 218, 75 N.W. 459, and the Chief Justice also stated that that was the ground upon which the decision in Brighton v. Lake Shore M.S.R. Co. was bottomed.
"Counsel for plaintiff also cites and relies upon the case of Reupke v. D.H. Stuhr Son Grain Co. 126 Iowa, 632, 102 N.W. 509, but in that case, the defendant's business manager was held, by the court, to have authority to employ the plaintiff there as grain solicitor for one year. In that connection, however, the court recognized the general rule that the manager of a corporation cannot engage employees for a long future period without express authority.
"Many other cases are cited, but on a careful reading of them, I find that they are not as closely in point as the ones just mentioned and considered.
"One of the earliest cases somewhat in point is that of Camacho v. Hamilton Bank Note Engraving Co. 2 App. Div. 369, 37 N.Y. Supp. 725. In this case the court said: `But no presumption of law can be indulged in that, because a person acts as such a manager, he has the power to bind his principal to contracts of an extraordinary nature, and of such a character as would involve the corporation in enormous obligations and for long periods of time. If the general manager, simply by virtue of his being charged with the ordinary conduct of the business, would have the right to bind his principal to a contract for services for three years, involving an obligation to pay thousands of dollars of salary to an employee, why may not that power extend indefinitely, so that he may make contracts for all employees for indefinite periods, and thus assume to himself a power which it cannot be supposed was ever intended to be lodged in him?'
"In the case of Carney v. New York L. Ins. Co. 162 N.Y. 453, 49 L.R.A. 471, 76 Am. St. Rep. 347, 57 N.E. 78, the court had up for consideration a situation much stronger than the facts established in this case.
"In that case, the board of directors passed a by-law conferring upon the president and actuary the authority to appoint, remove, and fix the compensation of employees, except agents, employed by the company. *Page 682 
The president and actuary employed a person to act in a medical capacity for the life insurance company, for life, and fixed his salary at certain amounts per year. The court said: `The by-law alluded to must be given a reasonable interpretation. We may assume that the power given to appoint was intended to include the power to employ, and to agree upon the compensation that should be paid; but in assuming this we cannot believe that the board of trustees, in adopting the by-law, intended to invest the executive officers named with the power to enter into unreasonable contracts as to the term of employment.'
"The court further held that the board of trustees, to whom the management and control of the corporation was given, could not grant authority to the president and actuary beyond the period for which the trustees held office, in that case four years.
"In the case of Laird v. Michigan Lubricating Co. 153 Mich. 52, 17 L.R.A.(N.S.) 177, 116 N.W. 534, quoting from the syllabus, the court said: `The secretary-treasurer of a corporation, who is also its manager, has no implied authority to contract for the services of an employee for a term extending beyond not only the term of his own office, but that of the board of directors, in the absence of custom or his being held out by the board of directors as having such authority.'
"In the recent case of Rennie v. Mutual L. Ins. Co. 99. C.C.A. 560, 176 Fed. 206, the court held that the president of an insurance company with general authority to make contracts, had no power to make a contract for the payment of an annual sum for life to an agent.
"In the case of Commercial Wood Cement Co. v. Northampton Portland Cement Co. 115 App. Div. 388, 100 N.Y. Supp. 960, the court held invalid a contract entered into by an executive committee of directors of the corporation made for a term extending beyond the term of their office.
"From the authorities cited, I reach the conclusion that the roundhouse foreman or master mechanic, or the two jointly, had no authority to enter into a contract with the plaintiff binding the defendant to give the plaintiff life employment.
"This brings us to the second point in this case. Is there any evidence of ratification?
"A number of cases are cited in plaintiff's brief touching this point, but again I find that they are all cases which had to do with the settlement *Page 683 
of the claims of injured employees, and hence they are not in point under the facts and the circumstances here.
"The case of Brighton v. Lake Shore M.S.R. Co. supra, on which emphasis is placed in plaintiff's brief, is a case where ratification by the company was shown by the fact that a sum of money was paid to the employee by the company itself as a part of the settlement. This fact, taken in connection with other facts in the case, made it a question of fact for the jury to determine as to whether or not there was a ratification.
"Naturally, on the question of ratification, we must turn to the facts. The facts show that the plaintiff had some correspondence with some one or more officials of the company after he was discharged, asking for an interpretation of certain rules and of his position, but nothing definite developed therefrom. What is more, the officials with whom he corresponded were possessed of limited authority.
"But what is of still greater importance is the fact that the correspondence speaks of investigations, and that the matter was being looked into. But there is not a word in the correspondence showing that the superior officers gave back to the plaintiff the position which he held prior to his discharge.
"Mr. Nicholson, who was general manager of the company's lines west of Mobridge, in his replies to plaintiff's demands, in general, simply stated that he would investigate the matter and ask some of the officers in charge of the work at Marmarth to give the plaintiff some kind of employment. Without setting forth any of the correspondence, it is all in evidence, I might say that there is not even a scintilla of evidence showing ratification on the part of the defendant company.
"There is no evidence showing that the plaintiff was given back his job for life employment after he was discharged, and there is no evidence that he received any payments of salary on said life employment position, after he was discharged. This being so, is there anything on which ratification can be based in this case?
"It seems to me that the record is entirely barren and devoid of the slightest evidence of ratification. There is no evidence in the record that would lead any one to believe that the defendant company, through its proper officers, or directors, or managing agents, had any knowledge *Page 684 
of the fact that the plaintiff was given life employment by the roundhouse foreman at Marmarth, prior to the plaintiff's discharge.
"Quoting from page 20 of the transcript:
`Mr. Lemke:
"Q. Did you have any discussion of this matter, personally, with any of the officials?
"A. No sir.
"Q. It was simply some of the letters here in exhibit?
"A. Yes, sir.
"Q. Did you ever have any discussion at the time you were being let out at the time with Mr. Phiffer — let me ask you first, was he still Roundhouse Foreman at that time?
"A. No, sir.
"The evidence on which the plaintiff claims to base ratification is found in the correspondence which took place after the plaintiff's discharge. But after a careful reading of the same and of all the evidence in the case, I am convinced to my entire satisfaction that, under the law relative to ratification, there is nothing on which to base ratification in this case.
"Giving the most liberal interpretation to the correspondence which took place between the plaintiff and some of the officers of the defendant company, after he was discharged, would lead one to believe that the plaintiff did not mention his contract with the roundhouse foreman, but rather an interpretation of certain rules, and of his rights thereunder; and in reply to that and other letters written by the plaintiff, the officials of the defendant company to whom the letters were addressed simply promised to make an investigation, and after such investigation was made, Mr. Nicholson, general manager of the company's lines west of Mobridge, stated that the best he could do would be to direct some parties looking after labor employment at Marmarth to give the plaintiff such work or job as might be open.
"From the most reasonable and liberal interpretation thereof in favor of the plaintiff, no one could conclude that such amounted to a ratification of the unauthorized life employment given by the roundhouse foreman. *Page 685 
"Counsel on both sides are agreed that there is no unpaid portion of any earned salary, and that the claim is entirely for damages for breach of contract, in the discharge of the plaintiff. For this reason, it would be useless to grant the motion for a new trial, for, in doing so, it would only prolong the case and lead to further expense on the part of both litigants. Either the plaintiff is entitled to have the verdict stand as it is, or the defendant is entitled to judgment for a dismissal.
". . . Being firmly convinced that the roundhouse foreman had no authority to make such an unusual and extraordinary contract with the plaintiff, and being equally convinced that there was no ratification by the defendant company of such contract, I have decided to allow the motion for judgment notwithstanding the verdict."
A careful consideration of the record leads us to the same conclusion as that reached by the trial court. The contract claimed by the plaintiff in this case is not merely one which entitled him to retain his position as a hostler permanently within the rules of the defendant railway company, and the provisions of the schedule or agreement entered into between the railway company and its employees; but it is a contract whereby the plaintiff claims to be exempted from the seniority rights recognized, or granted, to other employees of the railway company by such agreement. The schedule or agreement between the railway company and the Brotherhood of Locomotive Engineers and Brotherhood of Locomotive Firemen and Enginemen was introduced in evidence and is part of the record on this appeal. This agreement provides: "Enginemen and firemen will have preference forpositions of hostlers. This will not operate to disqualify those who now hold such positions, nor to prevent same being filled from other classes of employees who are eligible thereto, who can qualify." This agreement was in force at the time the contract under which plaintiff claims to recover in this suit was made. And plaintiff claims that the roundhouse foreman and master mechanic entered into an agreement with him whereby he was employed as a "fixture," and entitled to retain his place wholly without regard to the seniority rights of others, who under the schedules would be entitled to preference for the position of hostler. We, therefore, agree with the trial judge that the contract claimed by the plaintiff is clearly an unusual one, — one which the roundhouse foreman and *Page 686 
master mechanic, or both of them jointly, were not authorized to make in the absence of special authorization, and no such authorization appears. In other words, we agree with the trial judge: — the evidence does not establish that the roundhouse foreman or the master mechanic, or both of them jointly, had power to make a contract such as that claimed by the plaintiff in this case. And we also agree with the trial judge that there is no substantial evidence showing or tending to show that the defendant company through its proper officers ratified the alleged contract or arrangement between the plaintiff and the roundhouse foreman and master mechanic. This defect in the proof is fundamental and cannot be remedied upon another trial. Upon the whole record the defendant is entitled to judgment as a matter of law, and judgment notwithstanding the verdict was properly ordered. Meehan v. Great Northern R. Co. 13 N.D. 442, 101 N.W. 183; First State Bank v. Kelly, 30 N.D. 84, 152 N.W. 125, Ann. Cas. 1917D, 1044.
Judgment affirmed.
CHRISTIANSON, Ch. J., and JOHNSON, BIRDZELL, NUESSLE, and BURKE, JJ., concur.