NEPHEW *v.* MICHIGAN CENTRAL RAILROAD CO.

ATTORNEYS—SCOPE OF AUTHORITY—SETTLEMENT OF SUIT.

It cannot be presumed that the general attorney of a railroad company, having power to adjust and settle claims against it for personal injuries, has authority, as part of such a settlement, to bind the company by a contract to employ the injured person for life.

Error to Wayne; Hosmer, J. Submitted October 23, 1901. Decided November 4, 1901.

*Assumpsit* by Joseph Nephew against the Michigan Central Railroad Company for the breach of an alleged contract of employment. From a judgment for defendant on verdict directed by the court, plaintiff brings error. Affirmed.

In 1887, and for some two years prior thereto, plaintiff had been employed as a brakeman on a passenger express train of the defendant company. On May 5, 1887, his hand was injured while coupling the engine to the baggage car. He was detained from work only two or three days, and continued in his employment as a brakeman of that train until he was taken off in the fall of that year, and ordered to a similar position upon a regular train. He testified

that he was not able to set the brakes and hold the train according to the rules and regulations. He thereupon left the company's employ, and brought a suit for damages. In May or April, 1888, that suit was referred to an attorney of the company, was settled and discontinued, and the following receipt given by plaintiff:

"June 13, 1888.

"The Michigan Central Railroad Company,

"To Joseph Nephew, Dr.

"Address: Bay City, Mich.

"For damages for injuries received May 5, 1887, at West Bay City, being employed as passenger brakeman by this company, and while in the act of coupling the engine onto the baggage car, right hand was caught between the end of the link and lower part of the draw-bar of the engine, severely injuring the first and second fingers, and the cords leading to the same, disabling him for a long time, and it is claimed that the accident was caused through a defective draw-bar on the baggage car, —$314.75.

"This received in full settlement and satisfaction of all claims for damages of every kind whatsoever which I have or may have against the Michigan Central Railroad Company, arising in any way from said accident.

"Received June 13, 1888, of the Michigan Central Railroad Company, the sum of three hundred fourteen 75–100 dollars in full of the above account."

Plaintiff testified that this settlement was made with Mr. Russel, the general attorney for the defendant company; that, at the same time he executed this receipt, a written agreement was made and signed by him and Mr. Russel as attorney for the company, agreeing to employ him for the railroad company, for the rest of his life, at the same wages he had been receiving, to wit, $50 per month; that for this consideration he was to be employed at what he could do with his crippled hand. He testified that this agreement was retained by Mr. Russel; that he received a check for the amount stated in the receipt, less an amount deducted for his attorneys. A brother of plaintiff corroborated plaintiff's testimony as to the settlement.

The making of such an agreement is absolutely denied by Mr. Russel and by Mr. Nadolleck, who was then the chief clerk in the defendant's legal department, and Mr. Russel's assistant. Mr. Russel testified that he had no authority to make such a contract, and never had, by virtue of his employment as attorney, or by any special instruction, during his entire service with the company, made such an arrangement with any person; that his duty was to attend to the legal matters of the company; that claims for injuries came into his office, and that such claims were referred to him; that plaintiff presented a claim against the defendant company; that he told plaintiff the company was not liable, and he would settle only to avoid the expense of litigation; that he then referred plaintiff to Mr. Nadolleck, with instruction to settle at a sum not exceeding about $300. Mr. Nadolleck corroborates Mr. Russel.

Plaintiff testified that after the settlement he returned to Bay City, and applied to the superintendent of the company for employment; that he was not employed, and never has been employed, by the company, except one night and a day in 1889. He has been engaged in various businesses at different places. He testified further that he had applied to the company for work, but had never received it. He took no legal steps to enforce this contract until the commencement of this suit, May 11, 1899. The record contains not even a scintilla of evidence to show any ratification. There is no testimony to show that anybody, on the part of the defendant, aside from Mr. Russel, ever had any knowledge of the alleged contract.

*Edwin Henderson* and *Frederick C. Martindale*, for appellant.

*Ashley Pond*, for appellee.

GRANT, J. (*after stating the facts*). Authority to settle a lawsuit does not imply authority on the part of the attorney to make contracts for future employment.

Mr. Russel, the attorney for the company, had nothing whatever to do with operating the road, or the employment or discharge of employés. His sole duty was connected with legal matters. Corporations usually have such a general attorney, to whom they refer their legal matters, and ask for advice. His authority is limited to what is customary or necessary in such transactions. Mechem, Ag. §§ 285, 286; *Upton* v. *Suffolk County Mills*, 11 Cush. 586 (59 Am. Dec. 163). No authority is cited holding that an attorney at law is, by virtue of his employment, authorized to settle a suit against his client by entering into life contracts, or any contract affecting the future *status* between the claimant and the client. This contract is a most unusual one, to sustain which the proof should be clear and explicit. One seeking to uphold such a contract must show either express authority in the agent to make it, or a clear ratification. Neither is shown. In *Gamacho* v. *Engraving Co.*, 37 N. Y. Supp. 725, it was held, in regard to even a general manager, that no presumption exists that he has "the power to bind his principal to contracts of an extraordinary nature, and of such a character as would involve the corporation in enormous obligations and for long periods of time." It has been held that even directors have no authority to make contracts beyond the statutory terms of office. *Carney* v. *Insurance Co.*, 162 N. Y. 453 (57 N. E. 78, 49 L. R. A. 471, 76 Am. St. Rep. 347). This case is expressly ruled by *Maxson* v. *Railroad Co.*, 117 Mich. 218 (75 N. W. 459), where we distinguished and limited the application of the case of *Brighton* v. *Railway Co.*, 103 Mich. 420 (61 N. W. 550).

Judgment affirmed.

The other Justices concurred.