ANDY HORNICK, *Appellee,* v. THE UNION PACIFIC RAILROAD COMPANY, *Appellant.*

No. 17,231.

SYLLABUS BY THE COURT.

1. CONTRACTS—*Fraudulently Procured, No Reformation Asked, True Contract Enforced.* In his petition plaintiff set forth a written contract as he claimed it was made and alleged that it was not in his possession and he was unable to give a copy of it. In its answer defendant set out a copy of the written contract, which differed materially from the one set out by the plaintiff. In reply plaintiff alleged that the writing copied in the answer was fraudulently procured and did not contain all the agreements of the parties, and he then stated the terms of the contract as actually made and asked a recovery under it. *Held,* that the fact that formal reformation was not asked did not prevent the court from determining whether the contract signed contained all the agreements of the parties nor from enforcing the contract which was actually made.

2. PLEADINGS—*Verification by Attorney of Corporation.* Under section 112 of the civil code a verification of a pleading may be made by an officer, agent or attorney of a corporation without setting forth why it was not made by the corporation itself or otherwise complying with the requirements of section 116 of the code.

3. ——— *Verification, When too Late to Challenge.* A party who challenges the form or sufficiency of a verified pleading should attack it by motion before the introduction of the evidence is begun, and an objection made after the introduction of the evidence is ordinarily too late to be available.

4. AGENCY—*Evidence Required When Authority is Denied Under Oath.* Where the authority of a claim agent of a railroad company to make a contract embracing unusual stipulations is denied under oath it devolves on the opposing party to prove that the agent had such authority, and neither evidence of the statements of the agent nor the fact that he made that particular contract is sufficient to establish his authority.

5. ——— *Insufficient Evidence to Show Authority.* Proof that he was a claim agent with authority to settle claims against the company is not sufficient to establish that he had the implied authority to contract that the claimant should be employed in the service of the company for life or as long as he might desire to work. Nor is the mere fact that the claimant was given work for a brief time after the settlement was effected sufficient to prove that the agent was vested with authority to promise him permanent employment by the company.

Appeal from Wyandotte district court. Opinion filed October 7, 1911. Reversed.

*R. W. Blair, H. A. Scandrett, B. W. Scandrett,* and *C. A. Magaw,* for the appellant.

*T. A. Pollock,* and *E. C. Little,* for the appellee.

The opinion of the court was delivered by

JOHNSTON, C. J.: Andy Hornick, who was an employee of the Union Pacific Railway Company, was injured while in the service of the company, and after some negotiations with Taylor, a claim agent of the company, a settlement was made the terms of which are in dispute. At that time Hornick, who could not read or write, signed a paper which stated that in consideration of the payment of $25 he released the company from damages for the injuries which he had sustained. The release also recited that the $25 so paid to

him was the entire consideration for the settlement and that no promise or contract of future employment had been made. A letter, however, was given Hornick by Taylor to be presented to Holcombe, a division storekeeper, to the effect that a settlement had been made with Hornick without promise of future employment but suggesting that he was in an unfortunate condition, and that, under the circumstances, if there was any work he could do he thought Holcombe would employ him. The settlement was made and the letter written on June 8, 1909, and on the next day Hornick presented the letter to Holcombe and was given work, which he continued to do until September 22, 1909, when he was discharged. He then brought this action, alleging that a settlement of his claim for injury had been made and that a written contract had been executed under which he was to be paid $25 in cash and was to be given permanent employment at light labor at the rate of $1.60 per day as long as he cared to remain in the service of the company, but that he had no copy of the writing and was unable to procure one. There was an allegation of his discharge from service and of the violation of the contract and a demand for damages in the sum of $2000.

The answer of the company admitted that Taylor was its claim agent, with authority to settle claims on a cash basis, and that a settlement had been made on that basis and reduced to writing, a copy of which was set forth, and which contained a statement that $25 was the only consideration. There was a denial that there was any agreement to give Hornick employment, and a specific denial, under oath, that Taylor had any authority from the company to make such an agreement.

The reply alleged that when Hornick signed the contract he was told that the agreement as to employment was included in it; that he could not read or write, and that if the writing set up in the answer is the one

signed by him his signature was fraudulently obtained. He then alleged that the contract set out was not the true contract, but that it provided for perpetual employment during his life as stated in the petition. A trial resulted in a verdict in favor of Hornick.

It is contended on this appeal that as appellee's petition charged the breach of a written contract in failing to furnish permanent employment, and as the one signed and introduced in evidence contained no provision as to employment, there could be no recovery in the action, and the question was raised by motion and also by demurrer.

When appellee learned that the writing which he signed contained no stipulation as to employment he should have obtained leave to amend the petition and have set forth the real contract that was made and the circumstances under which the untrue or incomplete writing was signed and asked for reformation and the enforcement of the contract actually made. However, the facts omitted from the petition were set forth in the reply, thus informally pleading facts justifying a reformation of the contract and its enforcement. The appellee in his petition set out a written contract as he claimed it was made, giving its effect, and stating that it was not in his possession, and therefore an exact copy of it could not be included in his petition. The appellant, who had the writing, gave a copy of it in its answer. The appellee replied that the copy so shown in the answer was not the contract actually made and if he signed the paper his signature was fraudulently obtained, and he set forth the omitted terms and the real contract substantially as he had alleged in his petition. It thus appears that the contentions of the two parties were clearly stated and well understood and the record discloses that the claims of the parties were fully presented and tried out. The fact that formal reformation was not demanded did not prevent the court from determining, under the facts as

alleged and proven, whether the contract signed contained all the agreements of the parties nor from enforcing the agreement found to have been made.

In *Huber v. Claudel,* 71 Kan. 441, 80 Pac. 960, it was held that formal reformation of a writing was not essential to the enforcement of the contract found to have been actually made. It was there said:

"It has long been recognized that a court may supply matters omitted from a written contract either by mutual mistake or fraud, and having supplied such matters may enforce the contract as thus reformed. Nor is it essential that formal reformation shall be directed before enforcement of the contract as the court finds it should have been made will be ordered." (p. 443.)

(See, also, *Hardy v. LaDow,* 72 Kan. 174, 83 Pac. 401.)

There is evidence tending to sustain the claim of appellee that the agent who negotiated the settlement agreed to furnish employment to appellee, as he had alleged, and if the agent had authority to make the contract there was a basis for a recovery by appellee. The authority of the agent to contract that employment should be given appellee is denied under oath. This denial raises an issue of fact as to the authority of the claim agent and it devolves on appellee to prove that he was authorized to make such a contract. There is a claim that the verification of the answer of appellant was insufficient in that it was made by an attorney of appellant without setting forth the reasons why it was not made by the party himself.

The code provides that certain allegations, including those of authority, shall be taken as true "unless the denial of the same be verified by the affidavit of the party, his agent or attorney." (Civ. Code, § 110.) There is another provision in section 116 that when the verification is made by an agent or attorney he shall state the reasons why it is not made by the party himself,

and that such agent or attorney can not make the affidavit except when he has personal knowledge of the facts or when the plaintiff is an infant, or of unsound mind, or imprisoned, or when the pleading to be verified is founded upon a written instrument for the payment of money only and such instrument is in the possession of the agent or attorney, or when the party is not a resident of or is absent from the county. This provision manifestly applies to cases in which a natural person is a party. A corporation is incapable of making an affidavit, and for that reason the legislature provided in another section "when a municipal or other corporation is a party, the verification may be made by an officer thereof, its agent or attorney." (Civ. Code, § 112.)

As every one knows the reasons why a corporation can not make an affidavit, it would serve no purpose to state them in the affidavit made by the agent or attorney of the corporation. It is obvious that the restrictions in section 116 of the code do not apply to corporations. Under similar provisions in other states it has been held that the limitations on verification by agents or attorneys only apply to natural persons. (*Standard Fashion Co. v. Dean*, 8 Ohio Dec. 389; *Barrett Mining Co.' et al. v. Tappan et al.*, 2 Colo. 124.) Aside from this consideration the case appears to have been tried on the theory that the authority of the claim agent was in issue. No objection was made to the form of the answer before the introduction of the evidence nor was there any challenge of the verification. If appellee desired to question the form or sufficiency of the verification he should have attacked it by motion before going into trial of the facts. (*Warner v. Warner*, 11 Kan. 121.) The objection which was made after evidence had been introduced came too late. (*Hoopes v. Implement Co.*, 45 Kan. 549, 26 Pac. 34.)

The authority of the claim agent was in issue and the

burden, therefore, rests on appellee to prove that Taylor was. authorized to bind the company to give appellee "perpetual employment during his life," as he has alleged in his reply. In making his case appellee offered no proof of Taylor's authority to make the contract beyond that which tended to show that this particular contract was made. Appellant produced Taylor, the claim agent, and his assistant, and they testified that they made no contract with appellee to give him employment for life or for any future time, and they also testified that they had no authority to make contracts of that kind. On cross-examination it was shown that Taylor settled claims that arose on the line between Kansas City and Denver and the branch lines of the company in Kansas. He received letters and directions from the general claim agent of the system but had no authority to settle with any one except for cash. It thus appears that appellee did not meet the issue of authority of the claim agent with any proof, unless the act of the agent in making the contract, as testified by appellee, constitutes proof of authority. It has already been determined that the statements or acts of the agent in settling a particular case furnish no evidence of his authority. In *Railroad Co. v. Daugherty,* 72 Kan. 678, 83 Pac. 821, it was said:

"The scope of the authority of the claim agent and assistant claim agent of a railway corporation is not, however, defined by the law, and if put in issue must be proved as a matter of fact. Here the authority of the officials named to make the settlement relied upon as the plaintiff's cause of action was denied under oath, and there is no evidence of such authority in the record. It is true that the conduct of the officials named may appear to be inexplicable except upon the supposition that they had authority. Agency, however, cannot be proved by the acts or declaration of the agent except under special contingencies not here involved. The fact of authority must appear before the conduct of the agent can be shown to bind the principal." (p. 678.)

There is a contention that as Taylor was vested with authority to settle claims against the company he had implied power to settle on any terms that the company could adopt, and that the company should, therefore, be bound by the agreement which Taylor in fact made. Of course the company is bound by any act of his which is fairly within the scope of his agency. In the absence of evidence as to special authority of the agent to contract that an injured employee shall be given employment for life, can it be said that such a power is incidental to the functions of a claim agent or that such authority may be implied from the character of his position or the necessities of his business? It is often said that there is no implied power in the agent to do. acts that are unusual and extraordinary. (31 Cyc. 1337.) The exercise of authority by a mere claim agent of a railroad company to contract for the employees to operate the road for even brief periods would be unusual and extraordinary, but still more so if he undertook to contract that they should be employed for life at a fixed price or as long as they might desire to work. It is not one of the duties of a claim agent to employ men to operate the road. If the general manager, or other official to whom power of employment is intrusted, should make such a contract there would be some room to imply authority of this exceptional character, but the employing and discharging of officers, agents and employees of the company is not the purpose for which a claim agent is appointed nor is it a duty which naturally belongs to such an agency. If power could be implied in a claim agent to contract that persons should work for life it might also be implied that he was authorized to agree that the superintendent, manager, or president, under whom the employee had worked, should be discharged, or almost any other condition affecting the future organization, operation or finances of the corporation. Of course the company might confer special authority on a claim agent to make promises of

lifetime employment in settlements or might recognize and ratify agreements of that kind made by its claim agents, but no proof of this kind was offered.

In a New Hampshire case (*Bohanan v. Railroad*, 70 N. H. 526, 49 Atl. 103), involving the authority of a claim agent, it appeared that the agent made a settlement in which he promised the injured employee a sum of money and also future employment during good be· havior. The agent told the employee that he had authority to make the contract and the money promised was paid and work furnished for a short time. In an action on the contract the only testimony offered which tended to prove the agent's authority was his acts as claim agent and the fact that the company recognized the settlement so far as to pay the money promised and to furnish the employee work for a short time. It was held that the statements of the agent were no proof of his authority, and that evidence of the payment of money by the company on the settlement and of the furnishing of work for a time was not sufficient to establish the authority of the claim agent to promise employment during good behavior in settlement of the claim. It was there said:

"If the jury could find from such evidence that an agent was authorized to make a different kind of a contract, it would only be necessary to show that he had made a contract which his principal recognized to establish his authority to make any contract that the principal could make for himself. So if the jury could find from this evidence that Brown was authorized to promise work for life in settlement of the plaintiff's claim, they could also find that he was authorized to promise the entire earnings of the road for the same period, or to give the whole of its rolling-stock in settlement.

"There is no evidence that the plaintiff had a right to believe that Brown was authorized to make this settlement, for the only thing the defendants are shown to have done which tended to prove that Brown had any authority to act for them was to hold him out as their claim agent. Giving this fact the construction claimed for it by the plaintiff, Brown was their general agent

to settle claims. The duties of a claim agent are not prescribed by law, and it is not a matter of common knowledge that they are entrusted with greater authority than other general agents. Such agents are only clothed, as a matter of law, with authority to employ the usual and ordinary means of accomplishing that for which the agency was created." (p. 528.)

(See, also, *Backman v. Charlestown*, 42 N. H. 125; *Flanders v. Putney*, 58 N. H. 358; *Taylor etc. Co. v. Starkey*, 59 N. H. 142; *Hovey v. Brown*, 59 N. H. 114; *Hayes v. Colby*, 65 N. H. 192, 18 Atl. 251.)

Proof of the fact that Taylor was held out as claim agent and had been acting in that capacity warranted the inference that he had authority to employ the usual and ordinary means of effecting settlements, but it does not warrant the inference that he was authorized to use extraordinary means and promise employment for life or as long as appellee might desire it. It follows that the demurrer to appellee's evidence should have been sustained and the motion for a new trial granted.

The judgment is reversed and the cause remanded for a new trial.