Jones, J.
 

 This is a conflict case, certified to this court because the judgment of the appellate court in the instant case was in conflict upon a similar question decided by another Court of Appeals in
 
 Fay
 
 v.
 
 Buckeye Pipe Line Co.,
 
 30 Ohio App., 316, 164 N. E., 782.
 

 While many cases have been cited by counsel, in the last analysis the legal question presented is simply this: Whether the release, admittedly signed by the plaintiff, can be varied or supplemented by the alleged oral agreement testified to as having been made contemporaneously with the written release. Counsel on both sides agree that if the oral evidence offered at the trial is such as to vary or contradict the terms of the release, under the well-established principles of our jurisprudence such evidence is inadmissible. However counsel for plaintiff contend that the instant action was brought upon the oral contract, and therefore parol testimony may be offered touching the actual consideration agreed to be paid by the defendant, because, they contend, the omitted consideration was not embodied in the written release but was
 
 “a
 
 distinct collateral agreement on a subject-matter” not mentioned in the release. The release signed by the plaintiff was not only a receipt of money in full satisfaction of his claim, but purports to set forth a contract of settlement between the parties of all claims then existing or which might thereafter arise by reason of personal injuries sustained by the plaintiff at the hands of the defendant.
 
 Stone
 
 v.
 
 Vance,
 
 6 Ohio, 246. This was the earliest case in this state upon this subject, wherein this court, nearly a century ago, announced the following principle in its syllabus: “A paper purporting to be a receipt, but containing, in truth, a complete contract between the parties to it, can not be explained
 
 *519
 
 by parol, as can be mere general receipts for property or money.” See, also, tbe cases of
 
 Bird, Admr.,
 
 v.
 
 Hueston,
 
 10 Ohio St., 418, 430,
 
 Jackson
 
 v.
 
 Ely, Exr.,
 
 57 Ohio St., 450, 49 N. E., 792, and
 
 Cassilly
 
 v.
 
 Cassilly,
 
 57 Ohio St., 582, 49 N. E., 795; tbe opinions in tbe last two cases having been rendered by Judge Bradbury of this court; both cases denying the right to vary or contradict a written release by parol evidence.
 

 How then stands tbe instant case? Plaintiff admits that be signed tbe release agreement. That agreement expressly stipulates that “for tbe
 
 sole
 
 consideration of $1,250.00 received to my full satisfaction,” be releases and discharges tbe railway company from all claims and demands against tbe railway company then existing or which might thereafter arise from tbe injuries received. It recites that tbe $1,250 was received “to my full satisfaction” and in “full settlement.” Upon the trial, oral evidence was offered and received to tbe effect that tbe sum of $1,250 was not tbe sole consideration and was not received in full satisfaction and in full settlement; but that other additional considerations were orally agreed to, viz., tbe securing for tbe plaintiff of an artificial limb and a job for life. This evidence was not only at variance with, but was a direct contradiction of, tbe particular terms of tbe written contract, which provided that the sum named in tbe release agreement was to be the sole consideration of tbe release and was to be received in full settlemént therefor. Upon this feature of tbe case bow can it be claimed that tbe parol evidence could be admitted to explain or contradict tbe express language of tbe release agreement? Stipulations such as are incorporated in this agreement are not found in tbe release agreements reported in tbe two following cases, cited and relied upon so confidently by counsel for tbe plaintiff,
 
 Pennsylvania Co.
 
 v.
 
 Dolan,
 
 6 Ind. App., 109, 32 N. E., 802, 51 Am. St. Rep., 289, and
 
 Galvin
 
 v.
 
 Boston Elevated Ry. Co.,
 
 180 Mass., 587, 62 N.
 
 *520
 
 E. , 961, and in this respect those cases may be distinguishable from the case at bar. In the well-considered case of
 
 Huntington
 
 v.
 
 Toledo, St. L. & W. Rd. Co.,
 
 175 F. , 532, the United States Circuit Court of Appeals, dealing with a release more limited than the one in the present case, disapproved those cases and held that they were not in accord with the weight of authority. They certainly are not consonant with the former decisions of this court in the Ohio cases above cited. Another case directly in point is
 
 Gunter
 
 v.
 
 Standard Oil Co.,
 
 60 F. (2d), 389, decided by a Federal Circuit Court of Appeals in Missouri. In that case the signed written release was in almost the exact language that was employed by the parties here; but the federal court held that evidence of an oral agreement to employ the plaintiff for life was inadmissible. In
 
 Goss
 
 v.
 
 Ellison,
 
 136 Mass., 503, where a plaintiff had given his receipt for a certain sum “as full payment, as per claim,” the Massachusetts court held: “It is not open to the plaintiff to contradict the writing, by parol testimony that the sum paid was intended as part, and not as full payment.”
 

 Had the release agreement been attacked by the plaintiff as being void upon the ground that his signature was forged, that he had executed no such agreement, or had been surreptitiously induced to sign his name thereto by some trick or device resulting in the substitution of another or different document, parol testimony to that effect would have been admissible for the reason that it would tend, not to vary or contradict a written contract, but to show that he had not executed any such contract.
 
 Perry
 
 v.
 
 M. O’Neil & Co.,
 
 78 Ohio St., 200, 85 N. E., 41;
 
 Cassilly
 
 v.
 
 Cassilly, supra,
 
 594, where Bradbury, J., in speaking of this class of parol evidence, said: “The only effect this evidence could produce was to show that the written contract did not correctly express the agreement which the parties had made, that while it only imposed upon
 
 *521
 
 her son an obligation to pay her five hundred dollars, his real obligation was to pay her what he had paid her sister, which was two thousand dollars. Its admission was a violation of the settled rule of evidence, which prohibits the variation or contradiction of a written contract by parol evidence.”
 

 Counsel for plaintiff insist that they are not impeaching the release, or questioning anything therein contained; they argue that since they are suing upon the oral contract and not upon the written agreement, the former is separate and distinct from the latter, and, for that reason, this suit should be held to be one on a collateral agreement and upon a subject-matter not mentioned in the release. However, the subject-matter, that of procuring a lifetime job, was not a collateral agreement. It was the subject-matter considered in the negotiations, namely, that of arriving at a full and complete settlement of the plaintiff’s claim arising from the injuries he had sustained. Supplementing the pleadings by allusion to the evidence, it is plainly apparent from plaintiff’s own testimony that the only matter in controversy between the claim agents and himself was the compensation which he was to receive. He testified that he was first offered the sum of $400; then the sum of $600; later the sum of $800; and still later the sum of $1,000 and a lifetime job. All of these offers were refused, but he testified that, when they orally offered Mm the sum of $1,250, and guaranteed him a lifetime job and an artificial limb, he accepted it. Where written agreements do not purport to be a complete and final settlement of a transaction, considerations which are distinct and separate and which are not in conflict with those expressed in the written contract may be shown by parol testimony. The true rule permitting admission of oral agreements is well stated by the Chief Justice in the case of
 
 Seitz
 
 v.
 
 Brewers’ Refrigerating Machine Co.,
 
 141 U. S., 510, at page 517, 12 S. Ct., 46, 35 L. Ed.,
 
 *522
 
 837, wherein he states: “But such an agreement must not only be collateral, but must relate to a subject distinct from that to which the written contract applies ; that is, it must not be so closely connected with the principal transaction as to form part and parcel of it. And when the writing itself upon its face is couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing. ’ ’ It may be noted that the oral negotiations and agreement in the instant case, instead of being collateral, distinctly relate to a subject contracted for in the written instrument and are not dissimilar in character from the settlements agreed to in the
 
 Jackson
 
 and
 
 Cos-silly cases, supra.
 
 The syllabus in the former case is particularly in point, wherein it recites: “ As parol evidence which tends to prove that certain matters of account, then existing, were not included in such settlement, would contradict the writing in this respect, it is not admissible.” Whatever may be the decisions upon this subject in other jurisdictions, the decisions of this court leave no doubt as to its adherence to the rule that parol evidence may not be used to vary a written instrument such as was executed by the parties to this suit.
 

 The authority of the claim agents to make the alleged oral agreement was put in issue by the general denial of the defendant. If such promises were made, the knowledge thereof was not brought home to the defendant’s superior officers; therefore there could be no ratification. The plaintiff had pleaded that he was offered one of three jobs for life. He testified that he could select the position of firing a yard engine, the position of switchman, or a clerical position; he testified that he selected the higher paid position of firing a yard engine because it would lead to a promotion to
 
 *523
 
 the position of engineer. On the question of the agent’s authority, the court charged the jury as follows: “Where a corporation or any individual holds out one as an agent to transact certain business for it, whether it be the settling of claims or other business, one dealing with that agent has a right to assume that the agent has authority to do the things necessary to carry out the transaction upon which he is engaged, provided that assumption is such a one as would be made by an ordinarily prudent person.” There was no direct proof of the claim agents’ authority to make a promise guaranteeing a job for life. Did they have implied authority to make such promise ?
 

 , The authority of claim agents to settle claims is special in character. While the authority of claim agents may comprehend the making of settlements for money damages, promises that may usurp the functions of superior officers in their management and control of their line of road and in their selection of its personnel cannot be said to fall within the usual scope of such special agents’ authority. Public exigency, public safety, and public service are vital factors in a road’s operation, and these factors should not be placed in the hands of subordinate agents, but should repose in charge of the executives who are in control of their several departments; and before a company can be held to such extraordinary promises the proof must establish that the proper officers either authorized such promises to be made or ratified them after knowledge that they had been made. The leading case upon this subject, cited in textbooks more frequently than any other, is
 
 Hornick
 
 v.
 
 Union Pacific Rd. Co.,
 
 85 Kan., 568, 118 P., 60, 38 L. R. A. (N. S.), 826, Ann Cas., 1913A, 208. In that ease the claim agents had settled with the plaintiff and promised perpetual employment for life, or as long as he cared to remain in the service of the company. The syllabus reads: “Proof that he was a claim agent with authority to
 
 *524
 
 settle claims against the company is not sufficient to establish that he had the implied authority to contract that the claimant should be employed in the service of the company for life or as long as he might desire to work.” In the course of the opinion, the Chief Justice said: “There is a contention that as Taylor was vested with authority to settle claims against the company he had implied power to settle on any terms that the company could adopt, and that the company should, therefore, be bound by the agreement which Taylor in fact made. * * * The exercise of authority by a mere claim agent of a railroad company to contract for the employees to operate the road for even brief periods would be unusual and extraordinary, but still more so if he undertook to contract that they should be employed for life at a fixed price or as long as they might desire to work. It is not one of the duties of a claim agent to employ men to operate the .road.”
 

 To the same effect, and adhering to the same principle, are the following cases:
 
 Bohanan
 
 v.
 
 Boston & Maine Rd.,
 
 70
 
 N.
 
 H., 526, 49 A., 103;
 
 Maxson,
 
 v.
 
 Michigan Central Rd. Co.,
 
 117 Mich., 218, 75 N. W., 459;
 
 Nephew
 
 v.
 
 Michigan Central Rd. Co.,
 
 128 Mich., 599, 87 N. W., 753. In the
 
 Bohanan case, supra,
 
 the claim agent of the railroad company promised the plaintiff steady employment during good behavior. The New Hampshire court held that the investment of power in the claim agent to adjust claims against the railroad company did not warrant a finding that one dealing with him was justified in believing him authorized to promise unlimited employment, especially in the absence of evidence that such were the usual and ordinray methods of settlement. In the
 
 Maxson case, supra,
 
 the contract was made with one who claimed to be division superintendent of the railroad, who agreed that if the plaintiff would refrain from prosecuting his claim for damages the railroad would furnish him a
 
 *525
 
 job during the period of Ms natural life. The Michigan court held:
 
 “A
 
 division superintendent of a railroad has no implied authority to bind the company by an agreement to give life employment to an employe of the company in settlement of a claim for personal injuries.” In the
 
 Nephew case, supra,
 
 the plaintiff brought suit for breach of an alleged contract of employment. He had brought suit for damages and the suit was referred to the general attorney for the company, who, it was alleged by the plaintiff, agreed, as part of the settlement, that the company should employ him for the rest of his life at the same wages that he had been receiving. The court held that though the attorney had power to adjust and settle claims for personal injuries he could not be presumed to have authority “as part of such a settlement, to bind the company by a contract to employ the injured person.for life.”
 

 There is another forceful reason why the case should be reversed. Plaintiff failed to show any express authority on the part of the claim agents to make such an oral contract. On its defense, the defendant introduced a rule of the company which was in effect at the time this contract was executed. It was disclosed by the defendant’s testimony that the defendant furnished and distributed books of rules among its employees; however, there was no evidence that the plaintiff had knowledge of them. But whether he did or not the evidence was competent upon the vital fact in issue, whether the defendant had granted to or whether it had withheld from its claim agents authority to make settlements involving an employment for life, as alleged by the plaintiff. It is well known that rules are adopted and promulgated for the purpose of defining the duties of its various officers, agents, and employees, and they are obviously adopted for the purpose of defimng the particular functions they are expected to perform. Rule 706 of the Book of Rules is as follows: “No officer or agent of this
 
 *526
 
 railroad has authority to promise any permanent or temporary employment as a consideration, or part consideration, in the settlement of any claim for damages growing out of injury or other cause. The only consideration for any such claim must be one of money. ’ ’ This rule definitely refutes the claim that there could be any implied power to make settlements of this kind, and it expressly restricts the powers of a claim agent of the railroad to the making of settlements for a money consideration only.
 

 The motions of the defendant for a directed verdict, made in the trial court, should have been sustained. The judgments of the courts below are reversed, and, proceeding to render the judgment that the trial court-should have rendered, final judgment will be rendered in this court for the plaintiff in error.
 

 Judgment reversed.
 

 Weygandt, C. J., Day, Stephenson and Matthias, JJ., concur.
 

 Allen and Kinkade, JJ., not participating.