No. 33,997

Ed Diehm and Mary B. Diehm, *Appellees*, v. The Great Lakes Pipe Line Company, *Appellant*.

(87 P. 2d 537)

Opinion filed March 4, 1939.

*Edward H. Coughlin, Robert E. Coughlin,* both of Paola, *Charles M. Blackmar* and *Ralph M. Jones,* both of Kansas City, Mo., for the appellant.

*Ben F. Winchel,* of Osawatomie, for the appellees.

The opinion of the court was delivered by

Smith, J.:  This was an action for damages alleged to have been sustained when defendant laid a pipe line across land owned by plaintiff.  Judgment was for plaintiffs.  Defendant appeals.

The petition was in two causes of action.  The first cause of action alleged the ownership of the land and the execution of the right-of-way agreement.  A purported copy of the agreement was attached to the petition.  This copy showed that the right of way over the farm of plaintiffs was 157 rods long and that defendant agreed to pay one dollar a rod for it.  The petition then alleged that plaintiffs had been paid $78.50 to apply on the amount due under the right-of-way contract.  In this cause of action the prayer was for a judgment for $78.50.  It will be seen that this amount was fifty cents a rod for the distance the pipe line was constructed across the farm.  The second cause of action alleged damage to about ten acres of alfalfa in the amount of $50, the complete destruction of about five acres of alfalfa in the amount of $90, work in removing stones scattered over an alfalfa field by blasting in the amount of $12, sweet corn destroyed in the amount of $5, expense of reseeding the alfalfa in the amount of $50, damage to the surface of this five acres in the amount of $100, and damage to this

alfalfa field by a borrow pit. The prayer of this cause of action was for a judgment for $500.

As to the first cause of action, the defendant filed a motion asking that plaintiffs be required to plead a true copy of the right-of-way agreement as it was on file in the office of the register of deeds of the county. This motion was overruled. The answer of defendant denied that the copy of the right-of-way agreement attached to the petition was a true copy of the agreement executed by plaintiffs; that a true copy of the agreement was attached to their answer. The answer further denied that it paid $78.50 as a part of what was due under the agreement, but that $78.50 was paid in full payment for all sums due for right of way.

As to the second cause of action, the answer of defendant was a general denial. The reply of plaintiffs was a denial that the copy of the right-of-way agreement attached to the answer was a true copy of the agreement executed by plaintiffs, and denied that the payment of $78.50 was payment in full under the contract.

The jury returned a general verdict for the plaintiffs on the first cause of action in the amount of $78.50, and on the second cause of action in the amount of $249. It also answered special questions as follows:

"Q. 1. If you find for the plaintiffs in this action, you will please itemize the amount and items of damage sustained by them. A.:

| | |
|---|---|
| Sweet corn | $2.00 |
| (1937) Alfalfa on right of way, last yr | 25.00 |
| (1938) " " " " " this yr | 15.00 |
| (1937) Damage to alfalfa around field | 15.00 |
| Picking rocks | 12.00 |
| Reseeding | 20.00 |
| Borrow pit | 150.00 |
| Damage to alfalfa by delay in cutting because of stones | 10.00 |

"Q. 2. If you find that plaintiffs suffered any damage to their real estate, do you find that that damage was temporary? A. Yes.

"Q. 3. If you find for plaintiffs, what effort do you find that they made to minimize their damages, and itemize said efforts. A. Picked rocks.

"Q. 4. If you find that any damage complained of by the plaintiffs is permanent, then state upon what fact or condition you base said finding. A. None.

"Q. 5. If you find for the plaintiffs, what amount do you allow as damages to growing crops? A. $67.

"Q. 6. If your answer to question No. 5 is in the affirmative, or you make an allowance to the plaintiffs for damage to growing crop, how do you arrive at the amount of damage allowed—(a) For sweet corn injured or destroyed? A. $2. (b) For alfalfa injured or destroyed? A. $65.

"(Signed)    S. O. Bussell, *Foreman*."

Defendant filed a motion for judgment on these answers to special questions notwithstanding the general verdict on the ground that they were contrary to and inconsistent with the general verdict, and further asked that the item of $150 for borrow pit be remitted from the verdict because the jury, in answer to the second question above, eliminated this item from the verdict when it found that the damage to the land of plaintiffs was temporary. In this connection the motion pointed out that the $150 item was all predicated on evidence as to permanent damage to the real estate. This motion was overruled. A motion for a new trial was then filed and overruled. Judgment was given plaintiffs for $327 and costs on both causes of action.

It will be seen that the dispute as to the first cause of action is over the amount stated in the right-of-way agreement. This agreement was on a printed form, with a place for the names of the parties, the description of the land, the number of rods the pipe was to run and the price to be paid per rod left blank.

When Mr. Diehm took the stand he testified that he signed the written agreement. He was then asked what his understanding of the agreement was as to the price he was to receive per rod for the right of way. Counsel for defendant objected to the question because the effect of it would be to vary the terms of a written contract. After some colloquy between court and counsel the witness was permitted to identify a contract, which he stated was a copy of the contract executed by himself and wife, and was permitted to state that this copy was identical in its terms with the contract signed. This copy stated that the amount to be paid was one dollar a rod. The copy was not signed. Counsel then offered the original contract that was recorded with the register of deeds. This contract was the same as the contract introduced by plaintiffs, except that it was signed by plaintiffs and the price provided in it was fifty cents a rod. The witness was then permitted to testify over the objection of defendant that the price of fifty cents a rod was not in the contract at the time he and his wife signed it, and that he did not learn it was only fifty cents until he employed counsel; that he had signed a receipt for $78.50, but would not have, if the agent had not told him he would get the other fifty cents a rod along with the other damage just as soon as the pipe was laid.

Mrs. Diehm testified that the right-of-way agent prepared a copy of the contract and left it with them; that it provided they were to be paid one dollar a rod, and this agreed with talk they had had.

Another witness was permitted to testify that he was present when the right-of-way check was delivered to plaintiffs; that Mr. Diehm told him he was supposed to get one dollar a rod instead of fifty cents, and the agent had said "we will pay you this $78.50 today and when we come back here and finish the line, we will pay you an additional $78.50, with all the damages to your place and crops included." The court instructed the jury that if the plaintiffs had proved by a preponderance of the evidence that the consideration agreed upon by and between the parties was one dollar a rod then they might find for the plaintiffs for $78.50 on the first cause of action.

Defendants argue here that the trial court erred in admitting the above testimony, since its effect was to vary the terms of a written contract by parol evidence. It should be noted here that the petition did not allege any mistake in drawing up the contract nor that there was any fraud in obtaining the signatures to it. No other ground for a reformation of the contract was pleaded. No reformation was prayed for in the petition.

The position of plaintiffs is that two written instruments were submitted to the jury, one providing for the payment of one dollar a rod, which plaintiffs claimed is the real contract, and the other providing for the payment of fifty cents a rod, which defendant claims is the real contract, and that the jury believed that the contract produced by plaintiffs was the real one.

The cause of action was based on a contract. The only contract in this record that bore any signatures was the one relied on by defendants. That provided for a payment of fifty cents a rod. A printed form does not make a contract, nor does the filling in of some of the blanks make one. It must be executed by the parties to it. When we examine this record with this thought in mind we see that the plaintiffs were squarely against the task of changing the terms of a written contract. The fact is the instruction of the court to which reference has been made makes it plain that the court submitted to the jury the question of whether the written contract in this case had been changed by the oral agreement. How else could the jury find that the consideration was one dollar a rod when the only written contract in the record was for fifty cents a rod? The rule is not harsh. It works no injustice. In a case where the written contract has been obtained by fraud or there

has been a mistake in writing the contract so that it does not express the real intent of the parties reformation may be had. It may even be had in the same proceeding where relief under it is sought. (See *Hornick v. U. P. Railroad Co.*, 85 Kan. 568, 118 Pac. 60; also, *Huber v. Claudel*, 71 Kan. 441, 80 Pac. 960.) In this case the plaintiffs did not plead any facts entitling them to a reformation; neither did they ask for such relief. On the other hand, they insisted at the trial below, and here on appeal, that they did not ask reformation. This is not a case, therefore, which should be treated as though reformation had been asked for.

The plaintiffs cannot ignore the plain terms of the written contract and recover according to what they claim these terms should have been without reforming the written contract. In *Bush v. Tilley*, 49 Barb. (N. Y.) 599, in a similar case, the court said:

"The writing was the highest evidence of what the contract subsisting between the parties actually was, and the proposition was to change it and make it a different contract by inferior evidence. All the rules of evidence, both in law and equity, are in favor of the ruling of the court, on the question presented. It would be idle to cite authorities in support of such a proposition. The other parol evidence offered to explain, and vary, the written contract, was properly excluded. The contract between the parties, as is apparent, was to be in writing, and was reduced to writing accordingly. Until this contract was altered by the consent of all the parties thereto, or reformed by judicial sentence, there was no other contract subsisting between them than the one thus written. The previous oral negotiations, or stipulations, were all merged in the writing, and did not stand for the agreement, or for any agreement between the parties." (p. 604.)

See, also, *Gordon v. Goodman et al.*, 98 Ind. 269.

We hold, therefore, that the trial court erred in admitting the evidence of plaintiffs that the price agreed upon was other than that provided in the written agreement and in overruling defendant's motion for a directed verdict as to the first cause of action.

This brings us to a consideration of the second cause of action. The items for which the jury returned a verdict for the defendant on this cause of action have been noted. Attention is called now to the fact that the jury returned a verdict in the amount of $150 for a borrow pit and found that the damage to the real estate was temporary. In connection with this cause of action defendant points out that the petition of plaintiffs alleged damages to an alfalfa field, and one item of this damage was the appropriation of a borrow pit in the alfalfa field. The witness who testified as to

the damage stated that there was not one borrow pit, but three, but they were not in the alfalfa field, but on good bottom ground that was not being farmed. There was one witness who testified to a borrow pit on the north side of the pipe line, as well as the south side. The one on the north side might have been in the alfalfa field.

The rule is that damages can be recovered only for the damages alleged in the petition. Evidence is admissible to prove only the matters put in issue by the pleadings. (See *Newby v. Myers,* 44 Kan. 477, 24 Pac. 971; also, *Frazier v. Baptist Church,* 60 Kan. 404, 56 Pac. 752.) This would ordinarily require a reversal of this judgment on the second cause of action and the ordering of a new trial. However, there was a small amount of evidence as to a borrow pit on the side of the pipe line where the alfalfa field was located. In view of all the surrounding facts and circumstances we have concluded that the ends of justice will best be served by ordering a remitter of $100 of the $150 item for borrow pit, rather than by ordering a new trial.

The order of this court is that the judgment of the trial court on the first cause of action is reversed, and as to the second cause of action, if the plaintiffs will remit $100 of their judgment of $249 and so advise the clerk of this court within ten days after the filing of this opinion, the judgment of the trial court will be affirmed; otherwise it will be reversed for a new trial.

DAWSON, C. J., dissents from so much of the majority opinion and judgment as orders a reversal of the trial court's judgment on the first cause of action.