## LAIRD v. MICHIGAN LUBRICATOR CO.

1. CORPORATIONS—OFFICERS—AUTHORITY—CONTRACTS—RATIFICATION.

No ratification of an unauthorized contract of employment made by the secretary-treasurer and manager of a corporation with plaintiff appears where, upon the first discovery of the existence of the contract by the corporation, its validity was questioned, and plaintiff understood that his continued employment was not in recognition of the validity of the contract.

2. SAME—IMPLIED AUTHORITY.

Under section 7040, 2 Comp. Laws, the secretary-treasurer of

a corporation and manager of its business under direction of the board of directors, whose term of office is one year, has no implied authority to bind the corporation by a contract of employment of a clerk for a period of three years, and there being no evidence of any custom of the corporation or of a holding out of the secretary-treasurer as having that author. ity, the contract is unenforceable.

Error to Wayne; Donovan, J. Submitted April 14, 1908. (Docket No. 64.) Decided May 26, 1908.

Assumpsit by Albert G. Laird against the Michigan Lubricator Company for breach of a contract of employment. There was judgment for plaintiff on a verdict directed by the court, and defendant brings error. Reversed.

*Corliss, Leete & Joslyn* (*Paul B. Moody*, of counsel), for appellant.

*A. J. Groesbeck*, for appellee.

MONTGOMERY, J. The plaintiff brought an action to recover damages for the breach of a contract of employment covering the period of three years from the 1st day of February, 1904. The contract purported to be signed on the one part by the plaintiff, and on the other by George C. Morris, secretary-treasurer, on behalf of the defendant company, and provided compensation of $1,500 per year for the term of three years. The plaintiff continued in the employment of the defendant during 1904, and until the 11th of March, 1905, when his employment was terminated. The president of the company, Mr. Corliss, had in January, 1905, told him that his services would not be required, and that he had better seek other employment, and when told by the plaintiff that he had a contract with the defendant, and upon the production of the contract signed by Mr. Morris, he was assured by the president of the company that the contract was not binding. He was allowed to continue, however, until the 11th of March, when his services were finally dispensed with.

There was no testimony in the case offered by the plaintiff to show that other contracts of employment extending over a period of three years or for any considerable period had been made by Mr. Morris, nor was there any evidence that prior to the time the contract was produced to the president, Mr. Corliss or the directors of the company had any knowledge that such a contract as that involved here had been made. The plaintiff was paid by the week, and received his compensation from the bookkeeper, giving receipts therefor. Mr. Morris became insane in 1904, and was succeeded by John B. Corliss, Jr., in the office of treasurer.

The circuit judge directed a verdict for the plaintiff for the amount of salary stipulated from the time of his discharge up to the date of the commencement of the suit.

It is very obvious that there was no conclusive evidence of ratification, as upon the first discovery of the existence of a contract by the defendant, its validity was questioned, and plaintiff very clearly understood that in his continued employment the company was not recognizing the validity of this contract. The plaintiff's case must rest upon the implied power which the circuit judge seems to have found arising from the fact that Mr. Morris was secretary-treasurer of the corporation and manager of its business under the direction of the board of directors, to justify a contract of employment for a term of three years.

Section 7040, 2 Comp. Laws, provides:

"SEC. 4. The stock, property, affairs and business of every manufacturing or mercantile corporation shall be managed by not less than three directors, who shall be chosen annually by the stockholders at such time and place as shall be provided by the by-laws of said corporation, and who shall be stockholders and shall hold their offices for one year and until others shall be chosen in their stead."

Mr. Morris was elected as secretary-treasurer for the term of one year.

It would seem clear that in the absence of any evidence of custom or any holding out as possessed of authority other than the bare fact that he was secretary-treasurer and manager, the authority to continue employment not only beyond his term of office but beyond the period during which the entire management of the affairs of the company might be changed by the election of a new board of directors, would not be implied.

A case very much in point is *Camacho* v. *Engraving Co.*, 2 App. Div. (N. Y.) 369, in which a contract made by the defendant's vice-president and general manager for a term of three years was under consideration. The court said:

"But no presumption of law can be indulged in that, because a person acts as such a manager, he has the power to bind his principal to contracts of an extraordinary nature, and of such a character as would involve the corporation in enormous obligations and for long periods of time. If. a general manager, simply by virtue of his being charged with the ordinary conduct of the business, would have the right to bind his principal to a contract for service for three years, involving the obligation to pay thousands of dollars of salary to an employé, why may not that power extend indefinitely, so that he may make contracts for all employés for indefinite periods, and thus assume to himself a power which it cannot be supposed was ever intended to be lodged in him ? "

The case is in all substantial respects on all fours with the present case. It is cited with approval by this court in *Nephew* v. *Railroad Co.*, 128 Mich. 602. See, also, the cases collected in note to *Carney* v. *Insurance Co.*, 49 L. R. A. 471 (162 N. Y. 453).

The case cited by plaintiff's counsel, *Ceeder* v. *Lumber Co.*, 86 Mich. 541, is not in conflict with the views here expressed. It was assumed in that case that the employment of a sawyer for the season was usual and necessary in the conduct of the business with which the president of the company was entrusted, and it was held that as the primary intention of a corporation in employing an agent

is that he shall be able to accomplish the purposes of the agency, the power to do whatever was essential to the accomplishment of that object was to be implied. The situation is quite different from that here, as it can hardly be contended that the employment of clerks or subordinates for a term of years is essential to the conduct of the business. Whether there was proof in that case that it was customary to employ sawyers by the season is not made very clear by the decision. But the court would almost take judicial notice that such is the fact. There was no such proof in the present case, and if there be any presumption on the subject, it is quite the reverse as to the employment of clerks and subordinates in an office such as that of the defendant.

The court was in error in directing a verdict for the plaintiff, and the judgment will be reversed, with costs, and a new trial ordered.

BLAIR, OSTRANDER, HOOKER, and CARPENTER, JJ., concurred.