186 So. 699

**ALABAMA MILLS, Inc., v. SMITH.**

6 Div. 450.

Supreme Court of Alabama.

Feb. 16, 1939.

Martin, Turner & McWhorter and J. C. Blakey, all of Birmingham, for appellant.

Taylor & Higgins and Waldrop Windham, all of Birmingham, for appellee.

FOSTER, Justice.

Appellee sued appellant, and recovered a judgment for a sum equal to the amount stipulated as his anticipated earnings under an alleged contract of employment for the time from his discharge until the suit was begun.

The question first of all is whether he had such a contract as to justify the claim. Plaintiff was a mechanic residing in Birmingham, and had been employed on several occasions by defendant for services at its mill at Jasper. On those former occasions he was employed for a stipulated period of time and then released. In June 1935, he had employment provided by the Department of Public Works earning about seven dollars per week. This is some public welfare agency to aid unemployed, and had no contract with them. His version of his contract with a representative of defendant is shown by the following extracts:

"The first thing he said when he came out, he asked me if I had a job. I told him yes, I was working for the D. P. W. as a roofer, getting a dollar an hour for what few hours I worked, I didn't get many hours, about seven a week. He told me he had a regular job for me. I told him I didn't think I wanted it. I told him I would work for him and the job may not last. He told me if I would go with him he would guarantee me a regular job just as long as I wanted a job with him. * * We talked awhile and he said 'I will give you 50¢ for the first two weeks if you will go, and after two weeks, I will raise you to 55.' We talked on a while and I accepted the job. There was no certain amount of hours mentioned, but we always worked 40 hours. * * * I had a job with the Department of Public Welfare at the time Mr. Miller came out there. I had been with them a couple of months, ever since I had been laid off from the Alabama Mills; I went back on them. I

worked for them along about March and was laid off. I quit my job with the Department of Public Welfare when I got that job with the Alabama Mills. When I accepted employment with them and quit my Public Welfare job I went to Jasper, Alabama. * * * The day he fired me was on July 30, 1935. Mr. Miller fired me. That was the same man that hired me. And the same man that hired me every time I have been hired by this company. I performed my duties with the Alabama Mills under Mr. Miller, and I was doing work there as mechanic. * * During the time I was with the company, the last of May or first of June, up until the 30th of July, they paid me. They paid me at the rate of 50¢ an hour; $20 a week; 40 hours. I worked 40 hours a week. They never did give me a raise to 55. * *

"I don't know how the Department of Public Welfare is; I think it is the Government or State. Either State, City or County government. And it gives work and is supposed to give work to people that are unemployed. I never have signed a contract with the Department of Public Welfare. They just take me on and let me off as they please. My salary with the Department of Public Welfare was about $7.00 a week. To make it exactly, it was $6.90."

He worked five days a week, including Friday, and went home to Birmingham for Saturday and Sunday.

Since his services were terminated against his will and without assigning what the jury found was a sufficient reason, and since the jury accepted his version of the contract the question we have is whether it served to bind defendant for the period which the claim covered.

Defendant's version was to a different effect. But the jury settled that controversy, insofar as that trial was concerned.

Plaintiff did not work, as he testified, from the time he was discharged by defendant until he went to work for the W. P. A. about December 15th, after this suit was begun.

Appellant contends that a contract by which plaintiff should have the privilege of working for defendant at the stipulated amount of wages as long as he wanted to do so, was too indefinite to be operative, except for the services which were rendered and without mutuality; and if otherwise valid, though its terms are denied, as plaintiff contends they were, that

they were made by one without sufficient authority to bind appellant to that extent.

■ With respect to the first contention, we will endeavor to find an exact meaning of such a contract as that stated in plaintiff's testimony. A leading case upon that subject is Carnig v. Carr, 167 Mass. 544, 46 N.E. 117, 35 L.R.A. 512, 57 Am.St.Rep. 488. It was said that what they meant by a permanent employment was so long as defendant was engaged in the same nature of business and needed the service of such an employee, and plaintiff was able and willing to do it satisfactorily and gave no cause for his discharge. So construed, it was said the contract was capable of enforcement. We have had occasion to consider contracts of a similar sort, but which differ in a material respect. Our case of Peacock v. Virginia-Carolina Chemical Co., 221 Ala. 680, 130 So. 411, reviews many of the authorities on the subject. The general rule is there referred to that an indefinite hiring is presumed to be at the will of either party, in the absence of custom or facts showing a contrary intention. The question there, as in many cases, was whether an employment is such as that compensation which is payable by the week, or month or year, implies a minimum period equal to such as is thus named. Clark v. Ryan, 95 Ala. 406, 11 So. 22; National Life Ins. Co. v. Ferguson, 194 Ala. 658, 69 So. 823.

■ Undoubtedly a contract of employment which is in a true sense indefinite and without stipulation for an implied minimum period, is at the will of either party. 18 R.C.L. 508, section 19, and page 509, section 20; Howard v. East Tennessee, V. & G. R. Co., 91 Ala. 268, 8 So. 868; Arentz v. Morse Dry Dock & Repair Co., 249 N.Y. 439, 164 N.E. 342, 62 A.L.R. 231.

■ But if the terms of the employment are that the period of service shall be permanent, or as long as the employee wishes, the status is not so much that the service is for an indefinite period, but the question is whether the contract as made for a period of time to be fixed by the will of the employee is mutual in its operation and based upon a sufficient consideration. With respect to that situation, 18 R.C.L. 510, states the rule as follows: "Under some circumstances, however, 'permanent' employment will be held to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do and the latter shall perform the service satisfactorily. This seems to be the established rule in case the employee purchases the employment with a valuable consideration outside the services which he renders from day to day. Not infrequently contracts by railroad companies to furnish 'steady and permanent' employment to employees in consideration of the relinquishment of claims by the employees against the companies have been construed to show an agreement on the part of the company to furnish the employee with employment as long as the latter is able, ready and willing to perform such services as the company may have for him to perform. The fact that the employee has a right to quit work at his option does not give the employer a reciprocal right to terminate the contract at pleasure, since the employee, by releasing his claim, has paid a valuable consideration for the option."

It is likewise so analyzed in Rape v. Mobile & O. R. Co., 136 Miss. 38, 100 So. 585, and in the annotation in 35 A.L.R. 1422, et seq.; Roxana Petroleum Co. v. Rice, 109 Okl. 161, 235 P. 502; notes in 62 A.L.R. 234; Fisher v. John L. Roper Lumber Co., 183 N.C. 485, 111 S.E. 857, 35 A.L.R. 1417; Evans v. Cincinnati, S. & Mobile Ry. Co., 78 Ala. 341.

When a person purchases such a contract for a valuable consideration other than the service to be rendered for which he is to receive compensation, there is no reason to suppose that it is not as binding as any other contract thus supported. If he has purchased a contract by which his employer leaves the period of duration to him, it resembles the purchase of other sorts of option rights, subject to the limitation impliedly included that the employer shall continue in such business and need the things to be done, which the employee is to do. In other words, such employee must have a preference over others in doing that sort of work.

■ The nature of consideration which will uphold such a contract is right generally discussed in the cases above cited. They lead to the conclusion that if the hirer knows that the person being employed then has employment, and that he is giving it up to engage in his new work under the new contract, a valuable consideration is shown.

█ It is not within the province of the courts, especially at law, to weigh the value of the consideration against the value of the contract purchased on account of it. But it must be of substantial value, not merely nominal, if it is to support a suit for the breach of an executory contract. Maull v. Vaughn, 45 Ala. 134; 6 R.C.L. 678; 12 Amer.Jur. 614, 615.

█ If his employment was merely by a public agency to serve those who are otherwise unemployed, in the nature of charity or welfare, we suppose it would be his duty to accept other employment when offered, and his release of such welfare employment would not be in the nature of any consideration, but the performance of a public duty.

The evidence on that subject is too meager to do more than indulge in assumptions. The burden was on plaintiff to prove a valuable consideration. In doing so, he has not overcome implications resulting from matters of general and public knowledge, from which a want of substantial consideration may be inferred and not disproved. He has not sufficiently met the burden on him in that respect.

█ Appellant also insists that the contract was made on its behalf without due authority. Whatever his authority was, one Miles Miller is the only one who acted for appellant in doing so. His express authority is only shown by his own testimony, as to which he was competent to testify as a witness. McCarty v. Skelton, 233 Ala. 531, 172 So. 901.

█ Miller testified that he was foreman of the erecting and overhauling of machinery and in charge of repairs, but was not superintendent: that "the only way I can hire men for my department is to get permission from the general superintendent at the Birmingham office. I am working direct for him, and if I need a man I have to take it up with him before I can hire him. If one quits or I discharge him, why I cannot hire another man without permission." He had employed plaintiff on several previous occasions. The evidence was that on those occasions he was employed for a short definite time, such as one to three months. When his time expired he was let off. When he was so employed he was paid by the company.

From this evidence it cannot be said that he had the express authority to hire plaintiff at all. We do not think that a foreman, such as was Miles Miller, had without more implied authority to make a contract of employment binding on defendant on the terms as testified to by plaintiff. Fisher v. John L. Roper Lumber Co., 183 N.C. 485, 111 S.E. 857, 35 A.L.R. 1417; 13 Amer.Jur. 899, section 937, note 17.

█ The presumed authority of officers and agents of a corporation to make such extraordinary contracts is thus stated in 13 Amer.Jur. 899, section 937: "The authority of corporate officers or agents to enter into contracts on behalf of the corporation for permanent employment or employment during the life of the employee is not to be lightly implied. Applying this principle, the claim agent of a railroad company has no implied power to contract with the claimant for his employment for life or as long as he should care to work, and a similar conclusion has been reached in regard to the authority of a division superintendent of a railroad company. A mere foreman or boss has no implied power to contract to furnish an employee life employment."

To like effect is 7 R.C.L. 633, section 636; 14a Corpus Juris 428, 431, section 2284. The following cases are in point and are well considered: Carney v. New York Life Ins. Co., 162 N.Y. 453, 57 N.E. 78, 49 L.R.A. 471, 76 Am.St.Rep. 347; Hornick v. Union Pacific R. Co., 85 Kan. 568, 118 P. 60, 38 L.R.A.,N.S., 826, Ann. Cas.1913A, 208; General Paint Corporation v. Kramer, 10 Cir., 57 F.2d 698. Compare Heaman v. E. N. Rowell, 261 N.Y. 229, 185 N.E. 83; Laird v. Michigan Lubricator Co., 153 Mich. 52, 116 N.W. 534, 17 L.R.A.,N.S., 177; Kline v. Thompson, 206 Wis. 464, 240 N.W. 128.

█ In answer to that contention appellant says that though Miller may not have had the express or implied authority to make such a contract, defendant is estopped so to contend against this plaintiff because he had been hiring plaintiff on various occasions, and so far as he knew without consulting his superior before doing so. The authorities cited are clear to the proposition that if a principal permits an agent to assume certain authority in his transactions with the public or with a certain person, and accepts its benefits knowing the facts, that person may act and rely upon such apparent authority and contract with him so as to bind the principal within the limits of

that apparent authority. Atlanta Life Ins. Co. v. Ash, 228 Ala. 184, 153 So. 261; Roberts v. Williams, 198 Ala. 290, 73 So. 502; Langham v. Jackson, 211 Ala. 416, 100 So. 757; Southern R. Co. v. Beaty, 212 Ala. 608, 103 So. 658, and many others may be cited.

But that rule has no application when the authority thus exercised by the agent does not extend in its scope so as to include a transaction of the sort in controversy. Merely because a foreman for defendant has apparently exercised authority to hire men for defendant for short periods of a few weeks, it is not to be inferred that he has authority to contract with one extending through such period as the employee may himself wish to serve, provided of course the employer continues to use the services of such employment. That sort of contract is one which the authorities generally hold does not extend to high officers of corporations, unless it is shown to be customary to make such contracts in the course of the business.

No such custom is here shown, nor is any apparent authority in Miller to be inferred from the fact that on several other occasions he employed this plaintiff for a short definite period of service.

The authorities are to the effect that the contract such as plaintiff claims is of an extraordinary type, requiring an independent substantial valuable consideration, and that authority to make it must be clear and not to be lightly inferred, or be by virtue of some specific authority duly conferred.

We think the affirmative charge should have been given at the instance of appellant.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.