This action was commenced on December 30, 1983, when L.D. "Bubba" Harrell and his wife Julia R. Harrell filed their four-count complaint naming as defendants Reynolds Metals Company[1] and five individuals, all of whom were employees of Reynolds: Martin Hardy, Jr.; Hilton Tirey; Paul Webb; Neal Bishop; and Bob Andreas.
In count one of the complaint, L.D. Harrell alleged that defendants had defrauded him at some point prior to June 1, 1980, by falsely promising to provide him with lifetime employment with Reynolds.
L.D. Harrell alleged in count two of the complaint that defendants entered into a contract of lifetime employment with him on or about June 1, 1980, and that the defendants breached that contract of lifetime employment by discharging him from his employment with Reynolds on or about January 10, 1983.
He alleged in count three that defendants committed outrageous conduct by falsely representing to him he would have a lifetime or permanent employment with *Page 1383 
Reynolds and then terminating him without justifiable cause.
In count four of his complaint, he alleged that defendants engaged in a conspiracy to defraud him by promising him lifetime employment and inducing him to leave his job with his prior employer, Union Carbide Corporation.
Additionally, Julia R. Harrell alleged that she had been caused to suffer emotional distress and the loss of consortium and companionship of her husband. Defendants filed a motion to dismiss, and the trial court dismissed count four (conspiracy) as to all defendants, the consortium claim as to all defendants, and count two (breach of contract) as to the individual defendants.
As to the remaining claims, defendants answered by making a general denial and by raising the following defenses: that fraud had not been pleaded with the requisite specificity; that the statute of limitations barred the actions based on fraud and outrageous conduct; that L.D. Harrell was an employee at will; and that his work for Reynolds was unsatisfactory and he was therefore terminated for a just cause.
Defendants filed a motion for summary judgment, with accompanying affidavits. Plaintiff L.D. Harrell amended to add three additional counts alleging that defendants had intentionally interfered with his contractual relations (count five) and business relations (count six) with Reynolds, and alleging that they had wantonly breached his employment contract with Reynolds (count seven). Defendants amended their motion for summary judgment. The trial court granted summary judgment for all defendants as to all counts. Plaintiff L.D. Harrell then filed a Rule 59 (e), Ala.R.Civ.P., motion to alter, amend, or vacate the judgment, which was denied. He appealed. Julia R. Harrell did not appeal the dismissal of her consortium claim. Because this appeal concerns only L.D. Harrell, we shall hereinafter refer to him as "plaintiff" or "the plaintiff."
The standard of review of a summary judgment for the defendant based on the ground that plaintiff has failed to prove a cause of action is whether plaintiff has offered some evidence as to every element of the cause of action. Summary judgment for the defendant in such a case is proper only when it clearly appears, with no genuine issue as to any material fact, that there is no evidence as to an essential element of the cause of action. See Rule 56 (c), Ala.R.Civ.P. In determining whether there is any evidence of every element of a cause of action, this Court must review the record in a light most favorable to the plaintiff and resolve all reasonable doubts against the defendant. Autrey v. Blue Cross BlueShield of Alabama, 481 So.2d 345 (Ala. 1985); Burt v.Commercial Union Insurance Co., 489 So.2d 547 (Ala. 1986);Bardin v. Jones, 371 So.2d 23 (Ala. 1979).
The evidence, when reviewed in the light most favorable to the plaintiff, while resolving all reasonable doubts against the defendants, is as follows: Plaintiff was a casualty of Alabama's economic descent. He had been employed at Union Carbide Corporation's plant in Sheffield, Alabama, as a maintenance foreman for several years prior to the closing of that plant. Union Carbide offered plaintiff a chance to transfer to a Union Carbide plant in West Virginia without a cut in pay or loss of pension or seniority status. Plaintiff visited that plant and was interviewed for a job there, but he decided not to accept it. His employment with Union Carbide terminated on May 31, 1980.
On March 21, 1980, plaintiff submitted employment applications to Reynolds' Alabama Reclamation Plant in Sheffield for two job positions: maintenance supervisor and maintenance mechanic. On that day he did not talk with any of the defendants. He had no contact with anyone from Reynolds from March 21, until a few days before May 8, 1980, when he received a telephone call from defendant Webb. Webb invited plaintiff to a job interview at the Reclamation Plant; and on or about May 8, 1980, defendants Webb and Tirey interviewed plaintiff at that plant. Webb did most of the talking during the interview. *Page 1384 
The following is the pertinent part of plaintiff's testimony about what transpired:
 "I was told if I was offered a job, in the interview with Mr. Webb when he was explaining, you know, the evaluation system and everything; I was give[n] a history of the Plant and there hadn't been any layoffs in the Maintenance Department in the history of the Plant and that it would be a permanent job, that I wasn't just coming over for — they needed a man to fill a vacancy, I wasn't being hired on a temporary basis, I was receiving, that they were seeking somebody for a permanent job."
Plaintiff was not offered a job during that interview. Shortly after the interview, Webb talked with the plaintiff by telephone and offered plaintiff a job as maintenance supervisor with a monthly salary of $2,040, conditioned upon plaintiff's passing a physical examination. During this conversation, plaintiff accepted the job offer. On or about May 28, 1980, plaintiff passed the physical examination. Plaintiff later met with Anna Dean Means, an employee of Reynolds, and signed several documents in her presence; none of the individual defendants was present. Ms. Means in her affidavit testified that it was her unvarying practice to instruct each new salaried employee, such as plaintiff, to read two of the documents — one entitled "Corporate Policy-Conflict of Interest" and the other entitled "Salary Employment Notification" — before signing them. After plaintiff signed the documents, Ms. Means took the document entitled "Salary Employment Notification" to defendant Hardy, who signed it on behalf of Reynolds. At some point before plaintiff signed the "Salary Employment Notification," he had a conversation with defendant Hardy, during which Hardy told plaintiff when to come to work and to whom he should report. They also discussed various plant safety rules, plaintiff's rate of pay, plaintiff's test results, and the history of the Reclamation Plant. Additionally, Hardy told plaintiff that his future job would be permanent. Hardy did not use the word "lifetime" in discussing plaintiff's future job.
The "Salary Employment Notification" that plaintiff signed after his conversation with Hardy is a one-page form, which begins:
 "1. EMPLOYMENT CONTRACT (to be signed by the Company and the Employee) A. Reynolds Metals Company, Alabama Reclamation Plant, Employer, hereby employs Leslie D. Harrell, Employee and agrees to pay employee at the rate of $2,040.00 per month, Payable in semi-mo. installments. If Employee is subject to overtime payments, the rate is compensation for all hours worked up to forty hours per week, exclusive of overtime compensation. Any increase or decrease of the rate of compensation made after the effective date of this contract shall affect this contract only in respect to such a rate of compensation, all other terms and conditions hereof remaining the same: and in this respect, it is understood and agreed by both parties that this contract is to continue in force at all times during Employee's employment by Employer, notwithstanding temporary lapses of employment, or term, or change of duties, or contracts supplemental hereto. [Subparagraphs (1), (2), and (3) of Paragraph A are not pertinent to the issues in this case; they involve the employee's inventions and his agreement to keep trade secrets confidential.]
 "B. Except for Paragraphs (1), (2) and (3) hereof, which shall continue in force and effect, either party may terminate the remainder of this contract at any time and compensation shall be computed and paid at the above rate to the date of termination and no more.
 "Dated at Sheffield, Alabama this 28th day of May, 1980 Date effective 1980-06-01."
This is followed by the signatures.
Following the signatures is a section entitled "DESCRIBE EMPLOYEE'S DUTIES." At the bottom of this form there is a place to check "Permanent" or "Temporary." The word "Permanent" was checked. *Page 1385 
The plaintiff testified that his job performance was satisfactory or above and denied the existence of any cause for the termination of his employment. He denied any involvement with an incident involving the unauthorized leave of an employee who was alleged to have been intoxicated while on the job. Hardy testified that this incident was a factor in or precipitated the original request for plaintiff's resignation. Defendants Andreas, Bishop, and Hardy made the decision on January 5, 1983, to terminate plaintiff. Plaintiff refused to resign when his resignation was asked for, and he was terminated on January 5, 1983. He was not given an opportunity to represent himself at the meeting where it was decided to terminate his employment; he was not told that such a meeting was being held.
The term "permanent employment" was interpreted by this Court, following a Massachusetts case, in Alabama Mills, Inc.v. Smith, 237 Ala. 296, 186 So. 699 (1939), as follows:
 "[The Massachusetts court said that what was] meant by a permanent employment was [employment for] so long as defendant was engaged in the same nature of business and needed the service of such an employee, and plaintiff was able and willing to do it satisfactorily and gave no cause for his discharge. . . .
". . . .
 "`. . . "[P]ermanent" employment will be held to contemplate a continuous engagement to endure as long as the employer shall be engaged in business and have work for the employee to do and the latter shall perform the service satisfactorily. . . .'"
237 Ala. at 299, 186 So. at 701-02.
This definition has been quoted with approval in Bates v. JimWalter Resources, Inc., 418 So.2d 903 (Ala. 1982); Scott v.Lane, 409 So.2d 791 (Ala. 1982); United Security Life InsuranceCo. v. Gregory, 281 Ala. 264, 201 So.2d 853 (1967); Jordan v.Mallard Exploration, Inc., 423 So.2d 896 (Ala.Civ.App. 1982); and "permanent employment" was treated as lifetime employment in Masters v. Cobb, 431 So.2d 540 (Ala. 1983).
Our interpretation of "permanent employment" is different from that term's use in the marketplace, where it means steady or regular employment as opposed to temporary employment.Russell Axon v. Handshoe, 176 So.2d 909 (Fla.Dist.Ct.App. 1965); Malever v. Kay Jewelry Co., 223 N.C. 148, 25 S.E.2d 436
(1943).
By not addressing the appropriateness of our 50-year-old definition of "permanent employment," we do not intend for the bench and bar and employers and employees to assume that we deem this a perpetual definition.
When an issue can be resolved without overruling a line of cases, as it could be in Masters v. Cobb, supra, and as it can be in this case, then this Court, cannot fairly be accused of following the corridors of expediency if it does so resolve the issue.
Justice Beatty in Masters v. Cobb, supra, wrote:
 "It suffices to state that in the case of lifetime employment [permanent employment] such an agent as this who seeks to bind his corporation must have actual authority to do so or his corporation must ratify the contract or be estopped to deny it." 431 So.2d at 541.
We are convinced that the trial court was correct in granting summary judgment for Reynolds on the contract count.
Plaintiff has not argued in his brief that any individual defendant had actual authority to offer plaintiff "permanent employment," as that term is defined in Alabama Mills, Inc.;
however, there is direct evidence that they had no such authority. There is no evidence of ratification on the part of Reynolds. Plaintiff relies on apparent authority (the theory of estoppel). He argues that Hardy was personnel supervisor for a large and expanding industrial plant and, therefore, that Hardy, more than anyone else, would be looked to to determine any issues regarding employment at Reynolds. In the commercial context, contracts *Page 1386 
of permanent (lifetime) employment are unusual, extraordinary, relatively rare, and require authorization by resolution of the board of directors or action by the corporate governing body itself. Alabama Mills, Inc. v. Smith, supra; 2 FletcherCyclopedia of the Law of Private Corporations § 466.2 (rev. perm. ed. 1982); Power of Corporate Officer or Agent to HireEmployees for Life, 28 A.L.R.2d 929 (1953). The mere fact that Hardy was personnel supervisor is not evidence that he had that unique authority to bind his corporate employer to a permanent (lifetime) employment contract with a third party. The allegations of agency in paragraph 3 of the verified complaint (styled "PARTIES") does not provide any evidence that Hardy was properly empowered to enter into a permanent (lifetime) contract for Reynolds. This is all the plaintiff offered to prove the apparent authority of Hardy. It is not enough. To the contrary, however, there is evidence that Reynolds actually authorized Hardy to hire salaried employees only according to the terms of the employment contract form set out herein-before, which clearly provides that employment can be terminated at any time by either the employer or the employee. Plaintiff contends that defendants Webb and Tirey had the requisite apparent authority to bind Reynolds to a permanent (lifetime) employment contract with plaintiff merely because they were empowered to hire plaintiff. This Court rejected an identical argument concerning a sales manager, in Masters, 431 So.2d at 541-42. There was no evidence of an essential element of the cause of action for breach of contract; therefore, the trial court did not err in granting summary judgment as to that count.
The defendants raised an affirmative defense of statute of limitations to count two (fraud).
Summary judgment for the defendants based upon an affirmative defense is proper when there is no genuine issue of material fact as to any element of that affirmative defense and the defendants are entitled to a judgment as a matter of law. If there is such a genuine issue, summary judgment is inappropriate. In determining whether there is evidence to support each element of an affirmative defense, this Court must review the record in a light most favorable to the plaintiff and resolve all reasonable doubts against the defendant.
Plaintiff signed the employment contract on May 28, 1980. The defendants contend that plaintiff must have discovered the alleged fraud on that date, and, therefore, that under Sections6-2-39 (a)(5) and 6-2-3, Code 1975, plaintiff had one year from that date to file this action.[2] This action was not filed until December 30, 1983.
The contract provided "either party may terminate the remainder [everything except the provisions concerning employee's inventions and the employer's trade secrets] at any time and compensation shall be computed and paid . . . to the date of termination and no more." This certainly should have provoked inquiry by a person of ordinary prudence, as to what was meant by the oral assurance that this was a permanent job. This was particularly so, since on this same employment contract there was a place to designate whether the employment was "permanent" or "temporary" and the term "permanent" was checked. Is not this a clear indication that in the context of this employment, "permanent" meant an indefinite period of time to end when either party terminated it?
Facts constituting fraud are deemed discovered "when the person either actually discovered, or when the person ought to or should have discovered, facts which would provoke inquiry by a person of ordinary prudence, and, by simple investigation of the facts, the fraud would have been discovered." Gonzales v.U-J Chevrolet Co., 451 So.2d 244, 247 (Ala. 1984); Cooper *Page 1387 Chevrolet, Inc. v. Parker, 494 So.2d 386 (Ala. 1985). If the facts regarding the discovery of the fraud are uncontroverted and they demonstrate that the discovery was more than one year prior to the commencement of the lawsuit, summary judgment is appropriate. Gonzales, supra, at 247; Moulder v. Chambers,390 So.2d 1044, 1046 (Ala. 1980). If a person signs or receives a document that discloses facts inconsistent with the facts allegedly misrepresented to that person previously, that person is deemed to have discovered the fraud upon signing or receiving the document, even if the person did not read the document. Cooper Chevrolet, supra; Gonzales, supra.
In this case, plaintiff testified that he signed the contract which stated that either party might terminate it at any time and that after such termination there would be no more compensation owed. Ms. Means, who witnessed plaintiff's signatures on the document, instructed the plaintiff to read it before signing it. Plaintiff was a high school graduate. There is neither an allegation, nor any proof, that plaintiff was tricked into signing by a misrepresentation of the contents of the instrument at the time of signing which prevented him from reading the instrument (fraud in the factum). He stated that he did not read the document because he relied on the purported promises of lifetime employment made at some earlier time. Under Alabama law, plaintiff is not allowed the luxury of being lackadaisical. Retail, Wholesale Department Store EmployeesUnion v. McGriff, 398 So.2d 249 (Ala. 1981). Plaintiff is deemed to have discovered on May 28, 1980, that Reynolds could terminate him at any time and owe him no further compensation thereafter. His fraud claim is time barred. § 6-2-3, Code 1975. The trial court did not err in granting summary judgment for the defendants under count two.
An employee at will cannot be wrongfully terminated unless such termination is for a reason which contravenes public policy. There is no evidence of a termination or discharge for a reason which contravenes public policy. Therefore, such discharge does not rise to the level of "outrageous conduct," as that term is defined by this court:
 "[O]ne who by extreme and outrageous conduct intentionally and recklessly causes severe emotional distress to another is subject to liability for such emotional distress and for bodily harm resulting from the distress. The emotional distress thereunder must be so severe that no reasonable person could be expected to endure it. Any recovery must be reasonable and justified under the circumstances, liability ensuing only when the conduct is extreme. . . . By extreme we refer to conduct so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society. . . ." (Emphasis added.)
American Road Service Co. v. Inmon, 394 So.2d 361, 365 (Ala. 1980).
Conversely, it would be intolerable in a civilized society to hold that an employer is guilty of outrageous conduct for merely discharging an employee at will. That is what the plaintiff is asking this Court to do, for the termination is not for a reason which contravenes public policy, and there is no evidence that the termination was accompanied with the sound of fury. There was no error in the trial court's granting the motion for summary judgment as to count three.
Although the torts of interference with contractual relations(Evans v. Swaim, 245 Ala. 641, 18 So.2d 400 (1944)), and interference with business relations (Mims v. Citizens Bank ofPrattville, 372 So.2d 311 (Ala. 1979)), are recognized under Alabama law,[3] the alleged tortfeasor, by definition, *Page 1388 
must be independent of, or a third party to, the particular relation. Restatement (Second) of Torts § 766 (1979). It is well settled that a party to the "relation" cannot be held liable for interference with that relation. George A. Davis,Inc. v. Camp Trails Co., 447 F. Supp. 1304, 1309 (E.D.Pa. 1978);West v. Troelstrup, 367 So.2d 253 (Fla.Dist.Ct.App. 1979);Continental Casualty Co. v. Mirabile, 52 Md. App. 387,449 A.2d 1176 (1982). This Court has not considered to date the question of who is and who is not a "party" to a contractual or business relation. It is well established in other jurisdictions that a principal's agent or employee, who acts for or on behalf of the principal, is a "party" to that principal's contractual and business relations and not a third party thereto. West v.Troelstrup, supra; Continental Casualty Co. v. Mirabile, supra.
In Mirabile, a discharged employee brought an action against his former employer and several co-employees for conspiracy to interfere with the discharged employee's contractual relations with his employer and for other torts. The trial court directed a verdict in favor of the co-employees as to the claim for conspiracy to interfere with contractual relations. The Maryland Court of Special Appeals, in affirming this decision, wrote:
 "A third party who, without legal justification, intentionally interferes with the rights of a party to a contract, or induces a breach thereof, is liable in tort to the injured contracting party. [citation omitted] Recovery is not permitted, however, where the defendant is a party to the contract. [citation omitted] The tort contemplates the interference of two parties' contractual relations by a third party. Appellee [plaintiff], in the same declaration in which he alleges wrongful interference with contractual relations, alleges that Klinger, Lewis and Sheehan [the co-employees] `were acting as the agent(s), servant(s) and employee(s)' of Continental [the employer]. Klinger, Lewis and Sheehan cannot be Continental's agents for purposes of the first three counts and not for the purpose of the fourth count. Because they were acting as Continental's agents, they cannot be considered third parties and the claim must fall."
52 Md. App. at 402, 449 A.2d at 1185.
Mirabile is indistinguishable from this case. Plaintiff alleged in paragraph 3 ("Parties") of the verified complaint that the individual defendants "at all times pertinent to this lawsuit were agents, servants, or employees of said Defendant Reynolds and were acting within the line and scope of their employment with authority to act on behalf of Defendant Reynolds."
Plaintiff incorporated the contents of paragraph 3 ("Parties") into counts five and six of his complaint, as amended, which contain the claims for interference with contractual and business relations. Thus, plaintiff on his own labeled the individual defendants as "parties" to the purported contractual and business relations. There was no allegation in the pleadings nor proof before the trial court that the individual defendants were acting for their own interests or were not acting on behalf of Reynolds either when plaintiff was hired or when his job was terminated. Accordingly, the trial court committed no error in granting summary judgment as to counts five and six.
Although every contract does imply good faith and fair dealing (see § 7-1-203, Code 1975), it does not carry with it the duty imposed by law which we have found in the context of insurance cases. We are not prepared to extend to the area of general contract law the tort of bad faith that we have recognized in the context of insurance policy cases. KennedyElectric Co. v. Moore-Handley, Inc., 437 So.2d 76 (Ala. 1983);Brown-Marx Associates, Ltd. v. Emigrant Savings Bank,527 F. Supp. 277, 279-84 (N.D.Ala. 1981), aff'd, 703 F.2d 1361 (11th Cir. 1983). Because the plaintiff in the case at bar seeks to recover in tort *Page 1389 
under Alabama law for the willfull or wanton breach of his employment contract, count seven of the complaint fails to state a claim and summary judgment on that claim was proper.
Additionally, plaintiff's purported claim for wanton breach of contract is invalid as against the individual defendants for an additional reason: agents cannot be held liable for a principal's breach of contract. See Whitehead v. Davison OilCo., 352 So.2d 1339, 1341 (Ala. 1977); Paddock, Smith Aydlotte v. WAAY Television, 410 So.2d 106, 108-09
(Ala.Civ.App. 1982); Davis v. Childers, 381 So.2d 200, 202
(Ala.Civ.App. 1979), cert. denied, 381 So.2d 202 (Ala. 1980). The trial court dismissed plaintiff's breach of contract claim against the individual defendants based on this line of cases. Plaintiff's additional contention that the purported breach of contract was willful or wanton does not alter the Alabama rule that an agent cannot be held liable for his principal's breach of contract.
The trial court did not err in granting defendant's motion for summary judgment as to count seven.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON and BEATTY, JJ., concur.
[1] Plaintiff also named the following non-existent entities as defendants: Reynolds Aluminum; Reynolds Aluminum-Recycling and Reclamation Division; Reynolds Metals Company-Alabama Reclamation Plant; Reynolds Metals Company, Inc., a corporation.
[2] The statute of limitations has now been extended, effective January 9, 1985, to two years. See Act 85-39, Ala. Acts 1984-85 Second Spec. Session. That amendment has no application in this case.
[3] See Gross v. Lowder Realty Better Homes Gardens,494 So.2d 590 (Ala. 1986), where the distinction between causes of action for interference with contractual relations and those based on interference with business relations was abolished and the cause of action for interference with contractual relations was expanded.