ON APPLICATION FOR REHEARING
HORNSBY, Chief Justice.
This Court’s opinion of April 30, 1993, is withdrawn and the following is substituted therefor.
This case involves an unlawful detainer action and related claims between Century Plaza Company (“Century”), the landlord; Subway Real Estate Corporation (“Subway”), the tenant; Benjamin B. Lofton and Geneice L. Dancy, the sublessees; and BBL Group, Inc., a corporation that makes payments to Century on behalf of Lofton and Dancy. On October 23, 1989, Subway entered into a lease agreement (the “Lease”) with Century by which Subway would lease space from Century at its Century Plaza Mall in Jefferson County, Alabama, for operation of an “inline” restaurant. Subway agreed to pay rent and other charges due as set out in detail in the Lease. The Lease allows Subway to sublease the space to a bona fide Subway licensee.
On October 30, 1989, Subway subleased the premises to Dancy and Lofton, with whom Subway had an existing franchise agreement. On October 31, 1990, Century and Subway amended the lease (“Amended Lease”).[1] The Amended Lease provided that the mall space leased by Subway would be relocated to a food court that would be constructed by Century. By the terms of the Amended Lease, Century agreed to pay part of the costs of construction of the new premises in the food court area of the shopping mall.[2] As a condition precedent to Century’s *1054 execution of the Amended Lease, BBL Group, Inc., executed a promissory note (the “BBL note”) on behalf of Dancy and Lofton, the sublessees, for rental payments past due as of October 31, 1990.
Construction of the food court area was completed and the Subway restaurant opened into the new location, and closed its operation at the old location, on November 14, 1990. Century alleges that Lofton and Dancy, d/b/a Subway, paid the amounts due and payable on the BBL note and on the monthly charges to Century as required under the terms of the lease, until late in 1991, when, Century says, they fell behind on the regular monthly rental charges. On January 22, 1992, Century delivered formal notice of default on the Lease to Subway, BBL, and Lofton. On February 7, 1992, Century formally terminated the Lease and so notified Subway, BBL, Lofton, and Dancy.
On March 20, 1992, Century, seeking possession of the premises, filed an unlawful detainer action against Subway in the District Court of Jefferson County. BBL, Lof-ton, and Dancy were subsequently added as defendants in this action. The trial court entered a summary judgment in favor of Century on this claim. Subway appealed to the circuit court.
After this unlawful detainer action was appealed to the circuit court, it was consolidated with a pending action by Century against Subway for monetary damages for nonpayment of rent. Century later added claims seeking damages for breach of contract, breach of a promissory note, and breach of a guaranty agreement, seeking accelerated rents, and also seeking an injunction against the removal of any equipment from the leased premises. Subway filed a counterclaim against Century, alleging fraud, wrongful termination of a lease, breach of contract, tortious interference with Subway’s business, and breach of duty to mitigate damages. Subway also filed third-party claims against Lofton, Dancy, BBL, and John Hackney.[3]
All parties filed motions for summary judgment on their claims. After conducting a hearing on the motions, the trial court entered a summary judgment in favor of Century on the claim of unlawful detainer. The trial court’s amended order reads as follows:
“The motions for summary judgment filed by Plaintiff [Century] are granted and the Court finds that the Plaintiff is entitled to possession of Space FC-1 located in Century Plaza Shopping Center, and the Defendants [Subway, et al.] are ordered to vacate within 30 days of the date of this ‘Order.’ The motions are denied as to all other issues, the Court finding there are genuine issues of material facts as to amount owed.”
(Emphasis supplied.) The trial court entered an order pursuant to Rule 54(b), A.R.Civ.P., making the summary judgment final. Subway, BBL, Lofton, and Dancy appeal, contending that they presented evidence creating a genuine issue of material fact as to whether Subway was in default of the Lease and Amended Lease on February 7, 1992.[4]
“In reviewing the disposition of a motion for summary judgment, we utilize the same standard as the trial court in determining whether the evidence before [it] made out a genuine issue of material fact” and whether the movant was “entitled to a judgment as a matter of law.” Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988) (citing Chiniche v. Smith, 374 So.2d 872 (Ala.1979)); Rule 56(c), A.R.Civ.P. The movant has the burden of “showing material facts, which, if uncontested, entitle the movant to judgment as *1055 a matter of law.” Berner v. Caldwell, 543 So.2d 686, 688 (Ala.1989); Woodham v. Nationwide Life Ins. Co., 349 So.2d 1110, 1111 (Ala.1977). Once the movant has made this showing, the opposing party then has the burden of presenting evidence creating a genuine issue of material fact. Danford v. Arnold, 582 So.2d 545, 546 (Ala.1991); Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989).
The present action was filed after June 11, 1987; therefore, the nonmovant has the burden of establishing the existence of a genuine issue of material fact and must carry that burden by presenting substantial evidence. Ala.Code 1975, § 12-21-12; Bass v. SouthTrust Bank of Baldwin County, supra. “Substantial evidence” is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989).
Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412, 413 (Ala.1990); Harrell v. Reynolds Metals Co., 495 So.2d 1381, 1383 (Ala.1986); Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986).
Subway makes two basic arguments. First, Subway argues that it presented evidence creating a genuine issue of material fact as to whether it was in default of the Lease and Amended Lease on February 7, 1992. Second, it argues that Century did not provide the proper notice required by the Lease, and that this defect renders ineffective Century’s termination of the Lease.
/. DEFAULT
First, Subway argues that it was not in default of the Lease and Amended Lease when Century terminated the lease on February 7, 1992. Subway contends that the dispute over whether Subway was in default and owed any amounts under the terms of the Lease and Amended Lease when Century gave Subway notice of the delinquency derives from disputes involving construction costs, the BBL note, and a security deposit. Subway argues that it presented evidence that it does not owe amounts claimed by Century for construction costs, the BBL note, or the security deposit, while Century presented evidence that Subway does owe these amounts.
Century argues that, even if Subway does not owe these amounts, Subway was nevertheless in default of the Lease on January 22, 1992, and on February 7, 1992.
Subway presented an affidavit by its accountant as evidence that it was not in default of the Lease and Amended Lease. The accountant concluded as follows:
“Based on the review I made of the ... records ... it is my conclusion that Century received checks and money orders totaling $50,496 during the period from November 1, 1990, to December 20, 1991. A review of the billings by Century and the checks, cash, and money orders received by Century indicates that some part of the payments received by Century may relate to a franchisee promissory note payable to Century. It is not clear how much of the amounts received by Century relate to payments on the promissory note, minimum rent and/or common area charges. Minimum rent and common area charges which became due and payable by Subway under the Lease and Amended Lease between November 1, 1990, and February 7, 1992, totaled $48,989.34.”
(Emphasis supplied.) Subway argues, based on this evidence, that Century received $50,-496.00 in payments, while only $48,989.34 was due and payable by Subway to Century on rent and other monthly charges on the leased premises from November 1, 1990, through February 7, 1992. Subway argues that Century received $1,506.66 more than was due under the Lease and Amended Lease, and that Subway therefore was not in default when Century terminated the Lease and Amended Lease. Subway argues that it could not have been in default of the Lease for nonpayment unless more than the difference between what was received by Century and what was due and payable to Century *1056 was applicable to payments on the BBL note.[5]
Subway’s accountant specified that $48,-989.34 was due in minimum rent and other charges during the applicable period. These figures, however, do not consider the amounts due on the BBL note during the same period.
Although Subway presented evidence that it is not liable for amounts due on the BBL note, determining the amount due and paid on the note is important in determining that portion of the total amount received by Century applicable to payments on the note. A review of the cheeks and money orders received by Century, as well as deposit slips used by Century, reveals that no amounts were apportioned as applicable to rental payments or payments on the BBL note.
Century presented evidence that, in addition to the amounts due and payable according to Subway’s accountant, certain amounts were due and payable to Century on the BBL note during that period. Century presented the promissory note, which requires BBL to pay Century $754.64 each month for 48 months, beginning November 1, 1990. Lofton, who had executed a personal guaranty of the BBL note, submitted an affidavit stating that “all payments [on the note and personal guarantee of October 1990] have been made thereon up to January, 1992.” Given Lofton’s uncontroverted evidence that all payments were made from November 1990 through January 1992, we conclude that approximately $10,000 of the total amount received by Century was applicable to the note.[6]
The only evidence Subway presented in support of its argument is its accountant’s affidavit stating that “[i]t is not clear how much of the amounts received by Century relate to payments on the promissory note, minimum rent, and/or common area charges.” Subway does not contest or dispute Lofton’s statement that all payments due and payable on the BBL note had been paid through January 1992. Making every reasonable inference on behalf of Subway in this case leads to the conclusion that, of the $50,496 Subway argues Century received during the period in question, approximately $40,989.34 was payable as rent and common area charges.[7] The evidence presented below reveals that the minimum rent and common area charges that accrued during the applicable period totaled $48,989.34. The evidence before the trial court, therefore, does not create a genuine issue of material fact as to whether Subway was in default.

II. NOTICE

Subway next contends that Century’s notices of delinquency and of default did not comply with the requirements of Section 20.-1.1 and Article 22 of the Lease. Subway does not dispute the facts regarding notice, but it challenges the trial court’s application of the law and requirements of the Lease and Amended Lease to the facts. Subway acknowledges that on January 22, 1992, Century sent written notice of delinquency of the account to Subway and to BBL. The record further establishes that, more than 10 days later, on February 7, 1992, Century sent notice of termination of the Lease, and that *1057 on February 25, 1992, Century demanded that the premises be vacated.
Subway contends that the January 22, 1992, notice did not comply with the requirements of Section 20.1.1 of the Lease. Section 20 is composed of a list of “Events of Default,” including:
“20.1.1 The failure of TENANT to pay any part, portion, or component of any rental payments or any other charges payable by TENANT as and when the same shall become due; provided, however, for any three occasions within any calendar year, such an event shall not constitute an Event of Default unless TENANT shall fail to pay any such payment or charge within ten (10) days after LANDLORD has given TENANT written notice of such delinquency.”
Subway argues that Century’s failure to provide notice of the specific payments on which it charged Subway was delinquent amounted to a failure to give Subway notice and an opportunity to cure any default by Lofton and Dancy. Subway relies on this Court’s holding that a landlord is not entitled to a reentry of the premises and a forfeiture where a lease specifically requires notice and there is no evidence that the landlord complied with the notice requirements. Valley Properties, Inc. v. Strahan, 565 So.2d 571, 584 (Ala.1990). Subway, however, points to no requirement in the Lease, Amended Lease, or Alabama law that requires Century to specify the exact payments alleged to be delinquent as a condition precedent to reentry and forfeiture. Therefore, this argument is without merit.
Subway also argues that Century did not mail the monthly rental statements to Subway at its Milford, Connecticut, address, as required by Article 22 of the Lease. Subway presented no evidence that Article 22’s requirement that Century mail the monthly rental statements to Subway’s Connecticut address is a condition precedent to Century’s right to take remedial action upon Subway’s default. Subway acknowledges that on January 22, 1992, Century sent notice of the delinquency to its Connecticut address. Therefore, this evidence does not create a genuine issue of material fact.
Subway further argues that Article 22 required Century to give Subway notice of Dancy and Lofton’s failure to pay January rent within 10 days of the due date. Subway misconstrues the requirement in this provision. Article 22 requires Century to give notice of any default by Dancy and Lofton “within ten days of the occurrence of default,” not of delinquency. (Emphasis supplied.) Section 20.1.1 of the Lease clearly provides that delinquency alone is not an event of default, until at least the fourth delinquency in a calendar year; the failure to pay delinquent rent within 10 days after receipt of written notice of delinquency constitutes an event of default. Therefore, Article 22 does not obligate Century to notify Subway within 10 days of Dancy and Lofton’s delinquency, and this argument is without merit.
Subway further argues that it presented evidence creating a genuine issue of material fact as to whether Century waived any right to receive timely payments. Section 20.2.5 of the Lease, however, provides that by accepting late payments Century does not waive any of its rights under the Lease. Subway presented no evidence to rebut the terms of the Lease and to create a genuine issue of material fact.
Because Subway has not presented substantial evidence creating a genuine issue of material fact as to whether it was in default as of January 22,1992, and February 7,1992, the summary judgment is due to be affirmed.[8]
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION OVERRULED; AFFIRMED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.

. Subway contends that it was induced to execute the Amended Lease by representations on the part of Century that Century would take a promissory note in satisfaction of all amounts due under the Lease through October 1990, and that Subway would not be liable for any amounts owed under the Lease through the end of October 1990. Subway has a pending fraud claim against Century that is not at issue in this appeal.

. The parties dispute the amount Century agreed to pay on construction costs. Subway has a pending claim against Century for fraud based on alleged representations by Century’s agent regarding the total cost of the construction. *1054 That claim is not before this Court on this appeal.

. John Hackney operated the premises leased by Century to Subway pursuant to a management agreement.

. Century argues that Lofton, Dancy, and BBL do not have standing to appeal the circuit court’s judgment because, Century says, the district court's judgment became final against them when they failed to appeal that judgment. We need not decide that question, because we rule against Subway. If those aligned with Subway were properly before this Court, they too would lose. Therefore, it does not matter whether they are bound by the judgment of this Court or that of the district court.

. Subway’s arguments regarding the exact figures have varied. Relying on its accountant's affidavit and figures, Subway concluded that Century collected $1,506.66 more than was due. In its reply brief, Subway presented figures from which it argued that Century collected over $5,200.00 more than it was due.

. The parties dispute the amounts received by Century that are applicable to the BBL note. Century states that, according to the analysis of Subway’s accountant, $11,969.68 became due on the BBL note from November 1, 1990, through February 7, 1992. Century later claims that, of the $50,496.00 that Subway’s expert found Century to have received, $10,603.60 was for payment on the BBL note and the remaining $39,-892.40 was paid for rent. Century also presented evidence that it had received $9,810.32 on the BBL note between November 1990 and February 6, 1992.
A determination of the precise amount is not required in this case, because the trial court expressly found that "there are genuine issues of material fact as to the amounts owed.”

.Century presented evidence that it received $51,896.00 from Lofton and Dancy on behalf of Subway during the applicable period. Use of these figures also reveals that Subway was in default.

. This opinion should not be understood as addressing or affecting any claims not presented to this Court on these appeals.